(No. 60378.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. SCOTT M. HARMISON, Appellee.

*Opinion filed September 20, 1985.*

Neil F. Hartigan, Attorney General, of Springfield, and John A. Barra, State's Attorney, of Peoria (Jill-Wine Banks, Solicitor General, and Mark L. Rotert and Kenneth A. Fedinets, Assistant Attorneys General, of Chicago, and John X. Breslin and Gerry R. Arnold, of the State's Attorneys Appellate Service Commission, of Ottawa), for the People.

Robert Agostinelli, Deputy Defender, and Verlin R.F. Meinz, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

In a bench trial in the circuit court of Peoria County defendant, Scott M. Harmison, was convicted of calculated criminal drug conspiracy (Ill. Rev. Stat. 1981, ch. 56½, par. 1405(a)) and delivery of a controlled substance (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(b)(2)). He was sentenced to a term of six years in the penitentiary for the conspiracy conviction and a concurrent term of four years' probation for the unlawful delivery. Pursuant to section 5—9—1.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—9—1.1), the court imposed a $2,000 fine, representing the "street value" of the contraband. The appellate court reversed the conviction for conspiracy, affirmed the conviction for delivery, and remanded for resentencing. (124 Ill. App. 3d 236.) We allowed the People's petition for leave to appeal.

The testimony shows that an informant cooperating with the Peoria police called defendant and told him that he was looking for an ounce of cocaine for a "friend." The "friend" was Richard L. Barcus, Jr., an undercover narcotics agent. The informant and defendant negotiated the terms of the sale and delivery, and although defendant originally said that he did not want to meet the

"friend" who was buying the cocaine, a meeting ·in a parking lot was ultimately arranged. Defendant delivered a bag containing the cocaine, received the money, and was arrested at that time.

Before the delivery and after talking with the informant, defendant talked with his codefendant, Robert L. Dubois, and told him to go to the home of Pete Lowe, with whom defendant had had prior dealings involving cocaine, and obtain the cocaine. Defendant could not go directly to Lowe because he was indebted to him for cocaine previously purchased. Dubois succeeded in obtaining the cocaine from Lowe without paying for it at that time. He did not tell Lowe with whom he was associated or to whom the cocaine was to be sold. Dubois did inform Lowe, however, that the cocaine was not for his own use and that it was going to be sold.

Section 405 of the Controlled Substances Act, in pertinent part, provides:

"(a) Any person who engages in a calculated criminal drug conspiracy, as defined in subsection (b), is guilty of a Class X felony. \*\*\*

(b) For purposes of this section, a person engages in a calculated criminal drug conspiracy when:

(1) he violates any of the provisions of subsections (a) or (b) of Section 401 or subsection (a) of Section 402; and

(2) such violation is a part of a conspiracy undertaken or carried on with two or more other persons; and

(3) he obtains anything of value greater than $500 from, or organizes, directs or finances such violation or conspiracy." Ill. Rev. Stat. 1981, ch. 56½, pars. 1405(a), (b).

In reversing the judgment the appellate court held, *inter alia*, that the indictment charging the calculated criminal drug conspiracy was fatally defective because it did not name or identify the third person with whom

defendant was alleged to have conspired and that this defect made it impossible for defendant to develop his defense concerning the alleged agreement with the unnamed co-conspirator. The appellate court also held that the circuit court erred in denying defendant's motion for a bill of particulars which requested the identification of the unnamed co-conspirator.

The appellate court held further that the burden was upon the People to prove that defendant and two or more other persons conspired to sell the cocaine to Barcus but that they proved only that defendant and Dubois conspired to do so. It stated that the fact that defendant knew that Dubois would obtain the cocaine from Lowe was not sufficient to prove that Lowe was the third person in the calculated drug conspiracy. It concluded that the evidence did not prove that Lowe agreed with defendant or Dubois to the commission of the crime and, in fact, indicated that Lowe did not know about the defendant's participation in the planned sale. The court held that "[w]ithout the agreement of three or more conspirators there cannot be a calculated criminal drug conspiracy." (124 Ill. App. 3d 236, 239.) We note parenthetically that Dubois was acquitted on the calculated-criminal-drug-conspiracy charge.

We consider first the People's contention that the evidence presented at trial was sufficient to prove defendant guilty of a calculated criminal drug conspiracy undertaken with two other persons. The People argue that, because of the clandestine nature of a conspiracy and the difficulty of establishing it by direct proof, the courts have permitted broad inferences to be drawn of the conspiratorial intent from evidence of the acts, conduct and circumstances of the parties. Citing *United States v. Bruno* (2d Cir. 1939), 105 F.2d 921, they contend that conspiracies to distribute controlled substances have generally been considered to be interconnected and that a

participant in a segment of the conspiracy may be convicted of participation in the whole.

We have examined the authorities cited by the People (*Blumenthal v. United States* (1947), 332 U.S. 539, 92 L. Ed. 154, 68 S. Ct. 248; *United States v. Braverman* (7th Cir. 1975), 522 F.2d 218; *United States v. Bruno* (2d Cir. 1939), 105 F.2d 921) and find them inapposite. We need not discuss the individual opinions; they are consistent with the rule long established in this jurisdiction that conspirators, to be guilty of the offense, need not have entered into the conspiracy at the same time or have taken part in all its actions. (See *People v. Brinn* (1965), 32 Ill. 2d 232.) They do not, however, as does this case, involve a statute which requires that the conspiracy be undertaken or carried on "with two or more other persons."

The People contend that the evidence was sufficient to establish that each of the three individuals "played a role in the ultimate delivery of the controlled substance to Barcus." They argue further that defendant, Dubois and Lowe participated in a common scheme to distribute cocaine, and that a single objective was accomplished when Dubois obtained the cocaine and passed it on to defendant for further distribution. We are of the opinion, however, that this is not sufficient to sustain the conviction. Section 8—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 8—2) provides that a person commits conspiracy when, with intent that an offense be committed, he agrees with another to the commission of that offense. In *People v. Foster* (1983), 99 Ill. 2d 48, the court held that the conspiracy statute (section 8—2) encompassed a bilateral theory which required the agreement of at least two persons to support a conviction. Section 405 requires that the violation be part of a conspiracy "undertaken or carried on with two or more other persons." (Ill. Rev. Stat. 1981, ch. 56½, par.

1405(b)(2).) It does not purport to define conspiracy in any manner other than does section 8—2 and clearly requires that defendant agree with "two or more other persons." Assuming, *arguendo*, that the statute is ambiguous, as was said in *People v. Foster* (1983), 99 Ill. 2d 48, 55:

> "We are also mindful of the rule of construction in Illinois which requires us to resolve statutory ambiguities in favor of criminal defendants. *People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 370—71."

We agree with the appellate court that the evidence did not prove that Lowe agreed with defendant or Dubois to the commission of the offense. The evidence was insufficient to prove a calculated criminal drug conspiracy, and the appellate court did not err in reversing the conspiracy conviction.

The People have briefed and argued certain contentions concerning the sufficiency of the allegations contained in the indictment. In view of the conclusion reached, we need not, and do not, consider those contentions.

We consider now defendant's contention that the mandatory fine imposed under section 5—9—1.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—9—1.1) deprived him of due process and equal protection of the law, and violated the doctrine of separation of powers. Section 5—9—1.1 provided:

> "When a person has been adjudged guilty of a drug related offense involving possession or delivery of cannabis or possession or delivery of a controlled substance as defined in the Cannabis Control Act, as amended, or the Illinois Controlled Substances Act, as amended, in addition to any other penalty imposed, a fine shall be levied by the court at not less than the full street value of the cannabis or controlled substances seized.
>
> 'Street value' shall be determined by the court on the basis of testimony of law enforcement personnel and the

defendant as to the amount seized and such testimony as may be required by the court as to the current street value of the cannabis or controlled substance seized."

Concerning the contention that the statute effected a denial of due process, defendant argues that the legislative purpose in setting drug-offense penalties was to punish large-scale drug traffickers more severely than the drug user or the occasional petty distributor. (*People v. Bradley* (1980), 79 Ill. 2d 410.) He argues that the section does not achieve this purpose nor does it accomplish the legislative intent of acknowledging the functional and consequential differences between the various types of controlled substances. (See Ill. Rev. Stat. 1981, ch. 56½, par. 1100.) Defendant's contentions must be reviewed in light of the established rules that a strong presumption of constitutionality attaches to a statute (*People v. La Pointe* (1981), 88 Ill. 2d 482, 499), that the General Assembly has the authority to set the nature and extent of penalties (*People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537), and that the test of the proper exercise of the power is whether the statute is reasonably designed to remedy the evils which the General Assembly has determined to be a threat to the public (*People v. Bradley* (1980), 79 Ill. 2d 410).

Obviously, those transactions involving a greater volume of drugs will result in greater street value, and the amount of the fine is therefore determined by whether the offense was a large-scale operation or a petty distribution. We find no deprivation of due process.

Defendant contends that the statute deprived him of equal protection of the laws for the reason that drug offenders "subject to the mandatory fine are similarly situated to other criminal offenders including drug manufacturers who are not subject to the fine." As the court said in *People v. La Pointe* (1981), 88 Ill. 2d 482, 500:

"The equal protection clause does not deny the State

206

the power to treat different classes of persons in different ways. [Citations.] 'That clause requires equality between groups of persons "similarly situated"; it does not require equality or proportionality of penalties for dissimilar conduct.' [Citations.] That the legislature, under the State's police power, has wide discretion to classify offenses and prescribe penalties for the defined offenses is well established. [Citations.] Thus, the equal protection challenge in this context is limited: if any state of facts may reasonably be conceived to justify the enactment, it must be upheld. [Citation.]"

Concerning defendant's contention that the statutory provision for a mandatory fine violated the constitutional provision for the separation of powers, the arguments made were considered and rejected in *People v. Taylor* (1984), 102 Ill. 2d 201, and need not be further discussed.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*