THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL "BILLY" LeSHOURE, Defendant-Appellant (Clendora LeShoure *et al.*, Defendants).

Fourth District No. 4—85—0215

Opinion filed December 26, 1985.

Greaves, Lerner & Kirchner, of Champaign, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and Patrick T. Curran, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

Defendant, Michael LeShoure, appeals from the judgments of the circuit court of Champaign County entered after a trial by jury (1) convicting him on three counts of calculated criminal drug conspiracy (Ill. Rev. Stat. 1983, ch. 56½, par. 1405), and one count each of (a) unlawful manufacture of a controlled substance (heroin) (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(c)), (b) unlawful manufacture of a controlled

substance (cocaine) (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(b)(2)), and (c) unlawful possession of a controlled substance with intent to deliver (heroin) (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(c)); and (2) sentencing him to concurrent terms of imprisonment of 15 years for calculated criminal drug conspiracy, and 7, 10, and 7 years, respectively, for the other offenses. Defendant was also fined $500. The convictions were based on an information filed on November 1, 1984. Defendant has appealed.

Defendant contends here that: (1) He was entitled to a directed verdict on the calculated criminal drug conspiracy charges; (2) the trial court erred in permitting the State to charge him by information after an indictment making the same charges had been dismissed for prosecutorial misconduct before the grand jury; (3) the trial court should have suppressed the incriminating evidence upon which he was convicted; (4) his motions *in limine* should have been allowed; (5) the court erred in refusing an instruction tendered by him; (6) his objection to the testimony of a forensic scientist who examined various allegedly controlled substances should have been sustained; (7) the court erred in allowing an occurrence witness to testify after he improperly refreshed his recollection; and (8) the court erred in restricting the cross-examination of that witness.

We affirm all of the convictions except those for calculated criminal drug conspiracy, which we reverse.

The lead witness for the State was Vicki Hawley, an officer with the Champaign County major-case squad, who testified to participating in the execution of a search warrant at defendant's residence at 207 East Hill Street in Champaign on August 21, 1984, and the arrest there of defendant, his wife, Clendora LeShoure, and Larry McGowan.

Hawley testified to the following chain of events. When she and Squad Officer Jim Davis arrived at the defendant's residence, Clendora LeShoure was outside, talking to unidentified persons seated in a vehicle parked in front of the house. Hawley and Davis identified themselves as police officers, asked if defendant was home and informed Clendora of the warrant. Clendora was by then walking toward the door. Clendora then continued toward the door. When she got to the door, she yelled for her husband and tried to close the door. Officer Davis prevented her from doing this. The two officers then entered the house and saw defendant and McGowan in the kitchen. On the kitchen counter Officer Hawley saw a white powdery substance, baking soda, a bottle containing a clear liquid, scissors, cut plastic corners, and some money.

According to Hawley, she then (1) observed McGowan, who had been required to raise his hands, attempting to put something down the back of his shirt; (2) searched McGowan and found money in the amount of $202 in the back of his shirt; (3) searched defendant and removed from his shirt pocket a small cannister containing foil packets in which there was a brown powdery substance; and (4) found a cup on the kitchen counter in which were foil packets containing white powder and a brownish-black substance. Hawley testified that in closed drawers in the kitchen she also found a free-base pipe, sifters, cut pieces of foil, scales, funnels, a toothbrush, a razor blade, a spoon, inositol, baggies, aluminum foil, cotton balls, screen, tie-ties plastic straws, and two empty Dorman bottles. She did not testify to finding anything else in any other portion of the house, which was later identified as containing a controlled substance.

Officer Jim Davis testified to participating in the execution of the warrant and identified various items of personal property which were seized at that time. These items included large quantities of clothing, electronic equipment, and cameras. Several persons testified that various of these items had been stolen from them during burglaries. Officer Davis testified that in his work over the years in law enforcement he had become familiar with the trade of cocaine and heroin in Champaign County. He indicated that he was aware that cocaine and heroin were exchanged for items other than United States currency and that these items could include meat, clothing, jewelry, and electronic equipment. Often, these items were stolen merchandise.

Squad member Michael Cook testified that on August 6, 7, and 8 of 1984, he and Officer Stevens maintained surveillance on the defendant's residence. During that surveillance, a videotape was produced of persons entering and exiting the house. Officer Cook testified that despite surveillance of up to 20 hours per day, the videotape camera produced a videotape lasting only about 41 minutes due to power limitations. The videotape could not be run constantly but had to be stopped and started when people arrived or left. The jury was shown the videotape of surveillance for each of the three days.

Cook testified that on August 6, the defendant arrived home at about 8 a.m., left around 2:24 p.m., and returned home around 3 p.m. He further stated that he noticed Larry McGowan arrive at the home around 3:30, again at 4 p.m., and then return again around 5 p.m. wearing work clothes. McGowan left while the surveillance team was not watching the residence, and returned later that evening. Cook did not know whether Clendora was there at the home that day. He further testified that on that day he saw 34 to 35 persons entering and

leaving the defendant's residence, and on one occasion, one person who entered the residence seemed less oriented when leaving.

According to Cook, surveillance continued on August 7 and he saw defendant arrive home at 1:07 p.m. that day, and, although the team did not see defendant leave, Cook saw defendant again enter the house at 2:45 p.m., and several times that evening. Cook testified to seeing between 20 and 25 persons leaving the house that evening. Similarly, Cook testified to seeing defendant enter the residence several times on August 8 even though the surveillance team had not seen him leaving between some of his entries. Cook stated that he first saw McGowan that day at about 1:15 p.m. when McGowan was putting a bicycle together in front of defendant's house. Apparently McGowan left sometime later. Cook testified that McGowan returned at about 5 p.m. According to Cook, 9 to 10 other persons entered the home on that date.

John Martin, a forensic scientist with the Department of Law Enforcement of the State of Illinois testified to examining certain substances brought to him and identified as being taken in the search of defendant's home. He described tests performed and gave an opinion that various substances contained cocaine and heroin.

Defendant did not present any evidence.

■ We consider first defendant's contention that the court should have directed a verdict as to the counts charging defendant with the offense of calculated criminal drug conspiracy. Section 405(b) of the Illinois Controlled Substances Act states that a person commits that offense when that person violates certain provisions of the Act and when the "violation is a part of a *conspiracy* undertaken or carried on with *two or more other persons,*" and the offender obtains value greater than $500 from the conspiracy or "organizes, directs or finances such violation or conspiracy." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 56½, par. 1405(b).) Section 405 does not define the elements of conspiracy. The applicable definition comes from section 8—2(a) of the Criminal Code of 1961, which states that the offense of a simple conspiracy is committed when "with intent that an offense be committed, [one] agrees with another to the commission of that offense" and an act in furtherance of the conspiracy is committed by a conspirator. Ill. Rev. Stat. 1983, ch. 38, par. 8—2(a).

As we have stated, to be guilty of a section 405 conspiracy, the accused must have conspired with at least two others. The instant information charged defendant with conspiring with his wife, Clendora, and Larry McGowan. Thus, to prove defendant guilty of calculated criminal drug conspiracy, the State was required to prove that defend-

ant entered into agreements with both Clendora and McGowan to commit the drug offenses alleged. We hold that as far as Clendora is concerned, the proof of such an agreement failed as a matter of law.

The evidence showed that Clendora was defendant's wife and lived with him. The evidence does not indicate whether she was present during the times when various people entered the family residence during the surveillance before the execution of the search warrant. However, because of the large quantities of controlled substances, paraphernalia for the use of those substances, and apparently stolen goods in the house, the jury could infer that she knew of the presence of the contraband in the house and that it was being sold. There was also evidence that she attempted to warn defendant of the presence of the officers and to prevent them from arresting defendant when they advised her of their warrant and that they wished to see defendant.

Citing *People v. Jones* (1979), 75 Ill. App., 3d 214, 393 N.E.2d 1132, and *People v. Persinger* (1977), 49 Ill. App. 3d 116, 363 N.E.2d 897, the State maintains that the foregoing evidence was sufficient to show that Clendora was a conspirator in the alleged conspiracy. In *Jones,* as here, the question arose as to whether the evidence was sufficient to show the wife of an illegal possessor and deliverer of cannabis was a conspirator with him. The evidence showed that she helped prepare cannabis for delivery and had agreed to the use of her residence as a place for the storing and sale of the cannabis. In *Persinger,* the sufficiency of the proof to show that the husband was a conspirator with the wife was in issue. There, evidence was presented that he was present during various alleged controlled-substance sales conducted by the wife and that on one occasion he and the wife had threatened a purchaser who refused to pay. Evidence also showed that some of the controlled substances being sold had been obtained from druggists by use of prescriptions in the husband's name.

In both *Jones* and *Persinger,* the court noted the difficulty of proving the agreement necessary to a conspiracy and that the trier of fact was permitted to draw "broad inferences" of the existence of a common design among those charged from their conduct. (*People v. Jones* (1979), 75 Ill. App. 3d 214, 224, 393 N.E.2d 1132, 1140; *People v. Persinger* (1977), 49 Ill. App. 3d 116, 121, 363 N.E.2d 897, 901.) On the other hand, in *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 461 N.E.2d 631, an issue arose as to whether an admission by an individual was binding on the defendant because that individual was a conspirator with the defendant. The defendant was shown to be present during a cocaine sale by the other individual and to have told

the purchaser what the cocaine had cost. The appellate court held that the evidence was insufficient to establish a conspiracy.

Here, unlike in *Jones,* Clendora was not shown to have aided in the preparation of any of the controlled substances involved. Unlike in *Persinger,* she was not shown to have attempted to enforce payment from a sale. Mere acquiescence in known criminal activity is insufficient to give rise to an inference of conspiracy. (*People v. Mordick* (1981), 94 Ill. App. 3d 497, 418 N.E.2d 1057.) Clendora did attempt to warn her husband and prevent police entry when they arrived, but that conduct infers an attempt to protect her husband and does not give rise to an inference that she had an agreement with her husband to aid in the commission of the controlled-substance offenses charged.

McGowan and Clendora were also named as defendants in the information, were tried together with defendant and convicted of various charges. They have filed a separate appeal. We have, this day, affirmed Clendora's conviction for unlawful possession of heroin. (*People v. McGowan* (1985), 137 Ill. App. 3d 1154 (Rule 23 order).) We concluded that the evidence was sufficient to show that she had constructive possession. However, participation by an accused in the commission of an offense by another is not necessarily a sufficient basis to infer that the accused had conspired with that person to commit the offense. (*People v. Harmison* (1985), 108 Ill. 2d 197, 483 N.E.2d 162.) To hold that Clendora's possession gives rise to such an inference would be improper. It would constitute stacking that inference on top of the inference creating the constructive possession. The probative value of such a process is too weak to support a finding beyond a reasonable doubt that she and defendant had conspired.

Because of our determination that the State failed to show that defendant conspired with at least two other persons, we need not discuss in detail defendant's other theory in support of his assertion that the court should have acquitted him of calculated criminal drug conspiracy. At the close of the State's case, it dismissed the calculated criminal drug conspiracy counts as to McGowan and Clendora. As jeopardy had attached, the dismissal order operated as an acquittal of them on those charges. (*People v. Fulkerson* (1984), 127 Ill. App. 3d 1084, 469 N.E.2d 1124.) Defendant asserts that the acquittal of the named conspirators creates a binding determination that they could not be conspirators. Such would not be the case in regard to a simple conspiracy as defined by section 8—2(a) of the Criminal Code of 1961, because section 8—2(b) of the Code states that the acquittal of the person or persons alleged to have conspired with the accused does not prevent the accused from being found guilty of conspiring with them.

The Illinois Controlled Substances Act, however, does not contain a provision similar to section 8—2(b), and, under case law, the acquittal of the named conspirators negated the existence of a conspiracy prior to the enactment of section 8—2(b). (*People v. LaBow* (1917), 282 Ill. 227, 118 N.E. 395; see also *People v. Bryant* (1951), 409 Ill. 467, 100 N.E.2d 598; *People v. Cohn* (1934), 358 Ill. 326, 193 N.E. 150.) In *People v. Taylor* (1974), 18 Ill. App. 3d 480, 309 N.E.2d 595, this court held that because of the provision of the Cannabis Control Act providing for calculated criminal cannabis conspiracies (Ill. Rev. Stat. 1971, ch. 56½, par. 709), no crime of a section 8—2(a) conspiracy for violations of the Cannabis Control Act existed. The special legislation concerning cannabis was held to control over the general provision of the Criminal Code of 1961.

While the Illinois Controlled Substances Act is apparently dependent upon section 8—2(a) of the Criminal Code of 1961 for definition of the crime of conspiracy, the decision in *Taylor* indicates that the relationship between section 8—2 and such special legislation as the Cannabis Control Act or the Illinois Controlled Substances Act is limited. Accordingly, we leave to another time the question of whether *LaBow* or section 8—2(b) controls the determination of whether acquittal of necessary conspirators prevents the conviction of others of a calculated criminal drug conspiracy.

The precedent of *Taylor* prevents us from reducing defendant's convictions of section 405(b) conspiracies to simple conspiracies under section 8—2(a) where an agreement with only one person is enough to constitute a conspiracy.

The trial court properly rejected defendant's contention that the entire information upon which defendant was convicted should have been dismissed.

Prior to the filing of the information, a grand jury had indicted defendant on the same charges. A prosecutor had made an argument before the grand jury the substance of which was that: (1) Thefts by "junkies" in order to buy narcotics were causing a substantial increase of the price of merchandise in stores because of the added costs to merchants resulting from the thefts; (2) the major-case squad that had obtained the evidence here was financed by forfeitures of property arising from the convictions of those involved in the drug trade; and (3) although the unit then had sufficient funds, it needed more. Upon defendant's motion, the court dismissed the indictment upon the basis that the above argument constituted prosecutorial misconduct vitiating the indictment. The State then filed the instant information. The defense moved to dismiss it upon the basis that the

dismissal of the indictment was a bar to further prosecution. The court denied the motion.

■ The order dismissing the indictment was appealable under Supreme Court Rule 604(a)(1) (94 Ill. 2d 604(a)(1)), but the State opted not to appeal. The defendant places great importance on the failure of the State to appeal. However, the effect of not appealing is no more disadvantageous to the State than if it had appealed and lost, as would likely have happened here. No authority has been cited by defendant to support a theory whereby an impropriety upon the part of the prosecution before the grand jury is grounds for barring a prosecution. Such an impropriety merely tarnishes the product of that grand jury, the indictment, and requires that the State proceed anew. Now that the combined effect of article I, section 7, of the Illinois Constitution of 1970 and section 111—1(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 111—1(b)) permits charging all offenses by information, the punishment for prosecutorial misconduct in presenting an indictment is minor. But to immunize one accused of the offenses charged here because of the minor indiscretion involved would be a travesty of justice.

In contending the trial court should have dismissed the information, the defendant relies on *People v. Taylor* (1972), 50 Ill. 2d 136, 277 N.E.2d 878, and *People v. Quintana* (1967), 36 Ill. 2d 369, 223 N.E.2d 161. In *Taylor*, the trial court had allowed a preindictment motion to suppress evidence as being illegally seized. No appeal was taken. The State then indicted the defendant. The defendant again moved to suppress the same evidence, and the trial court granted the motion on the basis that the previous, unappealed suppression order was binding. The supreme court agreed and ultimately upheld the trial court's ruling on an appeal from the order of suppression. In *Quintana*, a charge against the defendant was dismissed for pre-arrest delay. No appeal was taken but a subsequent charge was brought. The trial court allowed a motion to dismiss the charge on the basis that the prior determination that the defendant's constitutional rights had been violated by the pre-arrest delay was also determinative that the second charge was untimely.

Defendant correctly points out that here, as in *Quintana* and *Taylor*, the appealable but unappealed ruling by the trial court became binding on the State. In *Quintana*, the order of dismissal might be considered a final order because it determined that the prosecution had been so tardy as to deny defendant his constitutional right to a speedy trial. No new charge could change that and any subsequent charge was inherently bad. In *Taylor*, the original order of suppres-

sion was an interlocutory order appealable by what is now Supreme Court Rule 604(a)(1) (94 Ill. 2d R. 604(a)(1)). The determination that the evidence be suppressed was binding throughout the trial. The State could not later contend that the seizure of the evidence was proper.

Here, the dismissal of the indictment was also an interlocutory order. Dismissals of charges because of invalidity of the charge are usually interlocutory orders. The State was bound by the determination that the improper procedure occurred before the grand jury. Even under prior law a new grand jury could issue a valid indictment even though, as to the same charge, a prior grand jury had issued a no true bill or a tainted true bill. Now that can be done merely by presenting an information.

Defendant makes several contentions as to why the evidence seized on August 21, 1984, in the execution of a search warrant at the time defendant was arrested should have been suppressed. He maintains that: (1) The sworn complaint upon which the warrant was issued was insufficient on its face; (2) he should have been given an evidentiary hearing to determine if the complaint for the warrant contained sufficient truthful allegations to support its issuance; and (3) many items not listed on the warrant were improperly seized.

The verified complaint for the search warrant described a surveillance of defendant by the major-case squad which began in September 1983 after complaints from neighbors of defendant about the transfer of small packets outside of defendant's residence at 207 East Hill. It stated that a number of what are termed "controlled purchases" were made during the course of the next year at the Hill Street Address and at another residence which was allegedly used by the defendant. According to the complaint, these activities culminated in a 72-hour continuous surveillance of defendant's residence on Hill Street on August 6, 7, and 8, 1984, by the major-case squad, during which time a videotape was made of persons entering and exiting that residence.

The complaint for the search warrant was sworn to by Officer Cook. Much of it was loosely drawn. A reader could not tell whether the affiant was speaking of events he had witnessed or matters told to him by others, or, indeed, matters told by others to those who related them to the affiant. However, the complaint did state that on July 24, 1984, a source was (1) given money, (2) searched and found to have no controlled substance on him, and then (3) sent into the house at 207 Hill Street. Later the affiant saw the "source" leave the premises and turn over a substance which tested positive for cocaine and heroin. The complaint said that a similar purchase was made the next

day and that on both days the source told the affiant that: (1) On each occasion defendant was seated inside the front door with foil packets of cocaine and heroin in his pockets; and (2) defendant sold some of the controlled substances to the "source." The complaint also set forth that the "source" told the affiant defendant had some lye present with which he could destroy the controlled substance in short order.

In the complaint, the affiant also described his participation in the surveillance of August 6, 7, and 8, 1984. He stated that he personally saw large numbers of people enter the house at 207 East Hill Street and on many occasions, when the door to the house was opened, he was able to see defendant seated just inside the door. The affiant also reported seeing a known heroin addict, Shank Watson, enter the premises during that time and exit in about eight minutes appearing "unsteady, unsure, and slower," and that Watson's head was drooping and his clothes, neat when going in, had become "disheveled."

The complaint met the "totality-of-the-circumstances approach" set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 230, 76 L. Ed. 2d 527, 543, 103 S. Ct. 2317, 2339. Although the factors of the reliability, veracity, and basis of knowledge of the source or informer are still of significance, under *Gates* they are merely matters to be considered. The complaint indicates that the affiant had some prior success with the "source" used for the July 24 buy. This would serve as some support that the source possessed the required characteristics. When combined with the things witnessed by the affiant, many of which were entirely consistent with the information from the "source," we hold that the described portions of the complaint meet the test of *Gates* and justify the issuance of the warrant. As will become significant later, we also hold that these allegations would be sufficient without the assertion of the affiant that Watson appeared disheveled, unsteady, or unsure.

■ Defendant's assertion that he was entitled to an evidentiary hearing with reference to the truth of Cook's sworn statements in the complaint for the search warrant arises from the decision in *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, and that of the First District in *People v. Garcia* (1982), 109 Ill. App. 3d 142, 440 N.E.2d 269.

Under *Franks,* when a defendant makes a substantial preliminary showing that false statements were deliberately or recklessly included in the affidavit in support of a search warrant, and that these statements were necessary to a finding of probable cause, the defendant is entitled to an evidentiary hearing on the issuance of the search war-

rant. Once the defendant gets his evidentiary hearing, he must prove perjury or recklessness by a preponderance of the evidence and, under *Franks,* he must show that if the false statements were excised from the affidavit, insufficient material would remain to show probable cause for the issuance of a search warrant. *People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840.

The *Garcia* court rejected the additional requirement that a defendant show that the affidavit is insufficient to support a finding of probable cause without the falsehood. That court stated:

"We recognize that even when a warrant affidavit is shown to contain blatant lies, *Franks* requires only that the lies be excised and the remainder of the affidavit be tested for probable cause. However, we believe the validity and effect of an intentionally false affidavit for a warrant is to be determined by Illinois law in an Illinois case, provided Illinois law does not give its citizens less protection than *Franks* and does not contravene rights and guarantees of the United States Constitution. [Citations.] The Illinois Supreme Court has not yet addressed the question of whether a search warrant issued upon an affidavit containing deliberate lies by the affiant should be upheld. We conclude that to hold such an affidavit is valid, even if the intentionally false allegations are not necessary for a finding of probable cause, would make the oath of an affidavit meaningless. *** [w]e believe that Illinois law would not allow an affidavit which contains lies by the affiant to be used as a basis for issuing a warrant." *People v. Garcia* (1982), 109 Ill. App. 3d 142, 148-49, 440 N.E.2d 269, 274-75.

Subsequent to *Garcia,* the supreme court in deciding *Stewart* expressly refrained from deciding whether Illinois law limited grants of evidentiary hearings to cases where the falsehood in the affidavit was on a fact necessary for the existence of probable cause. The *Stewart* court concluded that, there, the misstatements in the affidavit were not shown to be intentional.

The *Franks* court recognized that determining whether due process requires granting an accused who has moved to suppress evidence obtained upon a search warrant an opportunity to test the truthfulness of the affidavit requires the balancing of the interests involved. One such factor was stated to be the nature of the exclusionary rule as a judicially created remedy. The court considered this factor and others and concluded that the balance weighed in favor of requiring the holding of an evidentiary hearing. However, the court stated that because of the considerations weighing against requiring

such a hearing, "the rule announced today has a limited scope" (*Franks v. Delaware* (1978), 438 U.S. 154, 167, 57 L. Ed. 2d 667, 679, 98 S. Ct. 2674, 2683). The decision in *Garcia* is not binding on us, and we deem the best policy to be to give the rule the "limited scope" set forth in *Franks*.

The rule announced in *Franks*, and which *Garcia* would enlarge upon, is not one to protect innocent people from being convicted. It is one to discourage unreasonable searches and seizure. To require evidentiary hearings upon a showing of untruthfulness in unnecessary portions of the affidavits supporting complaints for warrants will tend to prolong proceedings. If the credibility of the affiant is to become an issue in motions to quash search warrants, many collateral matters will become material. In the process, more probative evidence will be excluded. The *Franks* limitations are necessary to strike a proper balance between the conflicting aims of the truth-seeking process and the deterrence of unreasonable searches and seizures.

A showing was made that aspects of the verified complaint for the search warrant were untrue. Officer Cook stated in the complaint for the warrant: (1) On December 5, 1983, a confidential source "purchased a white crystalline substance from [defendant] which tested positive for cocaine," and (2) that same confidential source made purchases of controlled substances from the defendant on November 10, 1983; December 5, 1983; and January 20, 1984. At a hearing on a motion to suppress, Cook admitted that he was not present at the December 5 "buy," and that he knew at the time of making the affidavit that (1) the person making the buy had been given a substance which was not controlled substance, and that (2) defendant was not present when the purchase was made by the source. An affidavit of a person who was the "source" for some of the foregoing transactions cast further doubt as to the truth of Cook's statements in regard to the foregoing.

Defendant's request for an evidentiary hearing as to the truth of the allegations of the complaint for the search warrant was accompanied by his affidavit. He stated there that he did not sell cocaine or heroin to a person on any of the dates on which sales were alleged in the foregoing complaint. He also stated that: (1) On July 25, 1984, he did not have foil packets of heroin or cocaine in his pockets and did not have a bucket of lye in his residence; (2) persons entering his house on August 6, 7, or 8, 1984, other than Shank Watson and Henry Goban, were not known drug addicts; and (3) Watson did not exit his residence in a disheveled, unsteady, or unsure manner.

■ The trial court denied defendant's request for an evidentiary

hearing on the basis that the defendant had failed to make a preliminary showing that Cook's statements in the complaint for the warrant were either deliberately false or reckless. Because we have rejected *Garcia,* we do not need to pass upon the trial court's reason for its ruling. We conclude that the defendant failed to meet the *Franks* requirement of showing falsehoods in the necessary allegations of the complaint. As we have indicated, the affiant's statements concerning what he knew or was told by the source concerning an alleged buy in late July of 1984 and the subsequent surveillance were sufficient, of themselves, to show probable cause for the search warrant. A showing that the statements of the sources to the affiant were untrue was immaterial. The question was whether the situation, as viewed by the affiant, indicated probable cause. The affidavits do not refute the truth of any statement made by Cook in regard to the happenings of late July 1984 and thereafter, except as to the condition of Watson as he left the house. As we have indicated, that statement was not necessary to a showing of probable cause.

The search warrant was limited to controlled substances and related paraphernalia. In making the search, the major-case squad seized large numbers of items not covered by the warrant but which clearly appeared to be stolen. Defendant maintains that the search was too extensive and the plain view doctrine did not justify the seizures of the foregoing property. The defendant relies on *People v. Harmon* (1980), 90 Ill. App. 3d 753, 413 N.E.2d 467. There officers had a warrant to search for stolen railroad property. They searched every minute area of a residence and seized various small items obviously not railroad property as well as some items which were such property. Because searching small areas was not necessary as railroad property was usually quite large, and because many of the small items were obviously not railroad property, the search was held to be improper.

Here, some of the drug-trade items, the seizure of which was authorized by the warrant, were likely to be small and hidden in obscure places. Thus a very wide search was justified. The nature of the various purportedly stolen items and the manner in which they were being kept indicated that they were likely stolen and traded for narcotics. The *Harmon* opinion recited that the United States Supreme Court opinion in *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, had indicated that the rule permitting the warrantless seizure of properly because it was in plain view and otherwise subject to seizure was limited to property the discovery of which was inadvertent. Here, the officers expected to find various

items of stolen property in defendant's residence. However, the rule that the plain view discovery must be inadvertent arose from *Coolidge* where the court indicated that the inadvertency requirement was not applicable to property which was "contraband [or] stolen." 403 U.S. 443, 471, 29 L. Ed. 2d 564, 586, 91 S. Ct. 2022, 2041.

Any property seized here which was neither covered by the warrant nor in plain view was so insignificant that any error in refusing to suppress it would have been harmless beyond a reasonable doubt.

■ The first of two motions *in limine* filed by defendant requested that the State be precluded from introducing the various allegedly stolen items into evidence as theft charges filed against defendant had been severed. The court properly denied the motion. The State introduced the testimony of squad member Davis that a method of operation for drug dealers was to exchange drugs for contraband. Under the evidence here, the presence of stolen property in defendant's house was circumstantial evidence which, when taken with other evidence, inferred that defendant was trading drugs for stolen goods.

■ Defendant's other *in limine* motion requested exclusion of videotapes taken during the surveillance of defendant's house. The camera making the tapes had been stopped when no one was entering the home. Thus, it presented the impression of a much steadier stream of people entering the house than had actually occurred. However, as the testimony describing the making of the tape fully explained this, the court did not abuse its discretion in also denying this motion.

Defendant's claim of error in the court's ruling on an instruction involves Illinois Pattern Jury Instruction, Criminal, No. 3.02 (2d ed. 1981), which concerns circumstantial evidence. When given in full, that instruction states:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of a defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.
>
> You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence."

■ The State tendered an instruction containing only the first paragraph of the instruction. The defense objected to giving the instruction in that form and tendered the instruction in its entirety. The State withdrew its tender, and the court refused the instruction in the form tendered by the defendant. The supreme court has recently held

that reversible error occurs when the instruction in its full form is refused in a case where all of the proof of the defendant's guilt is circumstantial. (*People v. Crow* (1985), 108 Ill. 2d 520.) Defendant maintains that all of the proof of the conspiracy was circumstantial. However, the instruction as tendered was not directed only to that count. Accordingly, it would have been error to refuse the instruction in its full form only if all proof on all counts was circumstantial. Clearly, there was direct evidence of defendant's possession of the various controlled substances. The court was not required to give the instruction in the form tendered. No error resulted from the refusal of the instruction.

▪ Forensic scientist John Martin described in detail various tests he performed on substances seized from defendant's premises. Prior to his testimony concerning the results of the tests, the defense made an objection that there was a lack of foundation for Martin to give an opinion as to the nature of the substances tested. The objection did not state how the foundation was lacking. Neither court nor opposing counsel inquired as to how the foundation was lacking and the court overruled the objection. Later, after the witness had stated his findings, completed his testimony and had been excused, the defense moved to strike the testimony on the basis that the witness did not testify that the tests were generally accepted as reliable scientific procedure and there was no showing that judicial notice had been taken of the tests' reliability. (See *People v. Knox* (1984), 121 Ill. App. 3d 579, 459 N.E.2d 1077; *People v. Harbold* (1984), 124 Ill. App. 3d 363, 464 N.E.2d 734.) The court denied the motion. The defense was correct in stating that there was no testimony of such acceptance and that no judicial notice of the reliability of the tests was shown. However, the detailed nature of the testimony in regard to the nature of the tests and how they were performed was deemed to be significant in *Knox*. Under the circumstances, we hold that the failure of the defense to state the nature of the lack of foundation until after the witness was excused constituted a waiver of the failure to establish the acceptance of the tests.

The defendant also contends that the foundation was lacking because there was no testimony that in Martin's opinion the equipment he was using was working properly. However, Martin did testify that the equipment had been tested recently. Moreover, the record does not indicate that this contention was ever specifically raised until after the close of the evidence.

▪ The parties agree that Officer Cook made a tape recording of his observations during the surveillance on August 7, 8, and 9 of

1984, and that he later listened to the tapes, made notes from the tapes and then destroyed the tapes. An earlier trial of the case was aborted when the court found that the State had not given the defense copies of the notes as discovery. At the instant trial, Cook was permitted, without objection by the defense, to use the notes to refresh his recollection as to (1) when on August 7, 1984, he first saw defendant, and (2) when, after 1:07 p.m. on that date, he then saw defendant. No motion was made to strike the testimony. Defendant now contends that the court erred in permitting the witness to use those notes in that manner. The issue is waived unless plain error resulted. Clearly it did not. In the present posture of the case with the conspiracy conviction overturned, any disadvantage to the defense in not being able to check the notes of the witness against the destroyed tapes is minimal.

The defendant also complains that the trial court erred in restricting his cross-examination of Cook. We have not been able to find anything in the record to indicate any such restriction.

For the reasons stated, we affirm all of the convictions except those for calculated criminal drug conspiracy. We reverse those convictions and the sentences imposed thereon. Because the conviction for the most serious offense for which defendant was charged has been reversed, we vacate the sentences imposed on the affirmed convictions and remand to the circuit court of Champaign County for resentencing without consideration of the aggravating factor of the reversed convictions which existed at the prior sentencing.

Affirmed in part, reversed in part, sentences vacated, and cause remanded.

McCULLOUGH, P.J., and TRAPP, J., concur.