THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EVERETT MASTERS, Defendant-Appellant.

Fourth District No. 4—86—0313

Opinion filed May 28, 1987.

1016

Law Offices of Morelli & Simpson, of Aurora (Vincent C. Argento and Fred M. Morelli, Jr., of counsel), for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

After a trial by jury in the circuit court of Vermilion County, a jury returned verdicts finding defendant, Everett Masters, guilty of counts charging him with the offenses of calculated criminal drug conspiracy (Ill. Rev. Stat. 1985, ch. 56½, par. 1405(a)), delivery of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)(7)), and possession

of a controlled substance with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(7)). The court entered judgment only on the calculated criminal drug conspiracy verdict. That offense was a felony, and the court subsequently sentenced defendant to a term of imprisonment for 25 years and fined him $3,800.

Defendant has appealed, contending (1) the evidence did not justify a determination by the jury that his guilt of criminal drug conspiracy had been proved beyond a reasonable doubt; (2) the court erred in the admission of hearsay evidence; (3) the court erred in denying his motion to suppress evidence; and (4) the sentence was excessive. We disagree and affirm.

██ The most serious issue raised by defendant concerns the sufficiency of the proof. Section 405(b) of the Illinois Controlled Substances Act, which defines the offense of calculated criminal drug conspiracy, does so in these words:

"For purposes of this section, a person engages in a calculated criminal drug conspiracy when:

(1) he violates any of the provisions of subsections (a) or (b) of Section 401 or subsection (a) of Section 402; and

(2) such violation is a part of a *conspiracy undertaken or carried on with two or more other persons;* and

(3) he obtains anything of value greater than $500 from, or organizes, directs or finances such violation or conspiracy." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 56½, par. 1405(b).

Section 8—2(a) of the Criminal Code of 1961 describes the offense of simple conspiracy as occurring "when, with intent that an offense be committed, [a person] *agrees with another* to the commission of that offense." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 8—2(a).) That section also describes the commission of an act in furtherance of the conspiracy by one of the conspirators as an element of the offense. Thus, the provisions of section 405(b)(2) requiring that the conspiracy be "undertaken or carried on with two or more other persons" require that the person charged and two others must be parties to the agreement which is the basis of the offense of calculated criminal drug conspiracy. (*People v. Harmison* (1985), 108 Ill. 2d 197, 204, 483 N.E.2d 508, 511; *People v. LeShoure* (1985), 139 Ill. App. 3d 356, 487 N.E.2d 681.) The evidence here was uncontroverted that defendant violated section 401(b)(7) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)(7)) prohibiting delivery of certain quantities of a controlled substance. The specific question involved is whether sufficient proof was made that he did so pursuant to an agreement with two others.

■ All of the evidence at trial was presented by the State and was mostly undisputed. The testimony shows the following sequence of events. On January 23, 1985, in Danville, Special Agent Mike Bane of the Vermilion County Metropolitan Enforcement Group (MEG) had two telephone conversations with Troy Owens concerning the purchase by Bane of a narcotic known as lysergic acid diethylamide (LSD) from Owens. In the second conversation, Owens stated to Bane that he had checked with a friend and could furnish Bane with 1,000 "hits" or small individual doses of LSD for $1,900. Bane indicated that he would like to purchase the 1,000 "hits." In a further telephone conversation on January 26, 1985, Owens told Bane he had not yet obtained the LSD but was expecting to obtain some. On January 28, 1985, Owens called Bane and told him that the LSD was then available. Owens asked Bane to meet him, give him the money, and then wait until Owens returned with the "hits." Bane refused, and Owens then directed Bane to meet him right away as his source was leaving to go to a nearby town. Bane had previously indicated to Owens that he had a friend who also wanted some LSD. Bane told Owens that he would get his friend and meet Owens.

The State's evidence further showed that Bane then drove with MEG Agent Frank Sporcich to a parking lot designated by Owens. They met Owens there, entered an automobile driven by Owens, and rode together to the Townhouse apartment complex in Danville. Owens told Bane and Sporcich to wait outside while he went into the building. Upon his return, Owens told them he had been told to bring the money for the purchase into the building. Owens did bring out a small quantity of tablets purported to be "hits." Owens described the person furnishing the LSD as his "partner." After some discussion, Bane agreed to give the $1,900 to Owens. Owens then went into the apartment and returned with 10 bags purported to contain the 1,000 "hits" about which Owens and Bane had been bargaining. Owens said the LSD for Sporcich would not be available until payment was given him. Owens described the people Bane was dealing with as a friend of his, that person's friend, and a woman to whom the apartment belonged.

Owens had previously pointed out to Bane the apartment from which he had obtained the LSD. Bane decided that the time had arrived for making some arrests and sent a signal to police officers that he had arranged to have nearby to come forward. Several officers then arrived on the scene, and Owens ran up toward the apartment.

Upon arrival of the officers, Robert Putnam, who was in charge of the MEG group, and Sporcich immediately climbed the stairs to the apartment, forced their way in, found two men, defendant and Mark

Belansky, and a woman in the apartment, and arrested all of them. Putnam asked the arrestees who had "the money," whereupon defendant produced a roll of money and handed it to Sporcich. The roll contained $1,380. Later, at a police station, Sporcich talked with defendant, who told Sporcich (1) Mark Belansky had telephoned him on January 28, 1985, requesting a supply of LSD the next day; (2) defendant drove from his Ohio home to Danville to meet with Belansky and Owens; and (3) defendant had sold the LSD to Owens for a price of $1,480.

Defendant was charged with conspiracy in that he conspired with Owens and Belansky to commit an unlawful delivery of LSD. The evidence was admittedly very strong as to every element of the offense except an agreement with both Owens and Belansky to make the unlawful delivery. The substances delivered by Owens to Bane were shown to be LSD in an amount sufficient in weight to satisfy the requirements for the underlying offense upon which the alleged conspiracy was based. Evidence of defendant's admission that he had come to Danville to sell the LSD was evidence of defendant's intent to commit the underlying offense. Evidence of defendant's admission that he agreed in a telephone conversation with Belansky to bring the LSD to Danville for sale was evidence of an agreement between defendant and Belansky for the commission of the underlying offense. Evidence that Owens took money from Bane, went into the apartment, and returned with narcotics which, under the evidence, defendant admitted to having furnished, is evidence that Owens was a party to the agreement to make delivery of the LSD.

The evidence concerning statements by Owens to Bane and Sporcich strongly corroborates the existence of a three-person conspiracy. We will subsequently explain that this evidence was admissible over defendant's hearsay objection. Evidence was presented that Owens stated: (1) he had a friend who could furnish the LSD; (2) he, Bane, and Sporcich should go expeditiously to the Townhouse apartments because his source was leaving town soon; (3) he could not bring the LSD from the apartment house because he had been told, presumably by the source, to bring the money for the purchase into the apartment first; (4) the person furnishing the LSD was his partner; and (5) the persons Bane and Sporcich were dealing with were his friend, his friend's friend, and a woman. Defendant, Belansky, and a female were in the apartment when the agents entered.

Defendant points out that in the statement defendant allegedly gave to Sporcich he had said that he had sold the LSD to Owens for $1,480. He points out that the evidence indicated that he did not have

the full sum of $1,900 on his person at the time of arrest. He contends that a strong inference was shown that, rather than conspiring with Owens and Belansky to sell the LSD to the agents, two sales took place. One sale would have been his to Owens, and the other, to which he would not have been a party, was by Owens to Bane. Defendant maintains that this theory is consistent with all of the circumstantial evidence. He relies on the decision in *People v. Harmison* (1985), 108 Ill. 2d 197, 483 N.E.2d 508. There, a defendant obtained narcotics from an individual who, pursuant to defendant's request, had obtained the contraband from a dealer. The defendant then made a sale of the substance to an undercover agent. The evidence showed that the dealer was never present near the ultimate sale to the agent and did not know that the substance was being furnished for a sale by the defendant. The supreme court held that the proof failed, as a matter of law, to show that the dealer was the third conspirator necessary to constitute a calculated criminal drug conspiracy.

Here, defendant was in an apartment overlooking the scene of the sale to the agents. The evidence indicated that he or Belansky, with whom he was shown to have made an agreement, controlled the manner in which the sale to the agents was made. Evidence was presented that Owens stated that his source was a "partner" of his. Evidence was also submitted that when Putnam asked who had "the money," defendant responded by giving up a roll of money later shown to contain $1,380. While that sum was less than the full sale price, defendant could well have divided the proceeds between himself and the other two alleged conspirators. The evidence was far different from that in *Harmison.*

■ Defendant asserts the recognized rule that commission of an offense cannot be proved by the confession of the defendant alone. (*People v. Lambert* (1984), 104 Ill. 2d 375, 472 N.E.2d 427.) Here, even if defendant's statement to Sporcich is taken as a confession, it would be supported by the substantial corroborating circumstantial evidence we have described which indicates defendant's guilt of a conspiracy.

The evidence was strong enough that the jury could properly have found beyond a reasonable doubt that defendant conspired with Belansky and Owens to commit the underlying offense. *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781; *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ As we have indicated, the testimony in regard to what Owens said was admitted over defendant's hearsay objection. As the statements were offered for the proof of the matters stated, they were inadmissible as hearsay unless they were admissible under the co-conspira-

tors exception to the hearsay rule. That rule indicates that, when a conspiracy has been shown, admissions by a conspirator in the course of the conspiracy are admissible against all of the conspirators. (*People v. Goodman* (1980), 81 Ill. 2d 278, 408 N.E.2d 215.) However, as set forth in detail in *Goodman*, the exception is only operative if the conspiracy between the declarant and the other conspirators can be shown *prima facie* by independent evidence. The *Goodman* court further stated that the *prima facie* proof of the conspiracy should, preferably, be made before introduction of the testimony coming under the exception, but no mandatory rule exists.

■■ The proof of the illicit association between the declarant and the defendant may be totally circumstantial. (*United States v. Cicale* (2d Cir. 1982), 691 F.2d 95, *cert. denied* (1983), 460 U.S. 1082, 76 L. Ed 2d 344, 103 S. Ct. 1771.) The evidence, independent of Owens' alleged statements, is the following: (1) defendant's admission that he agreed with Belansky to come to Danville so that a sale might be made; (2) defendant's presence in an apartment overlooking the scene of the sale at the time of the sale; (3) the superintendence of that procedure for the sale exercised by either defendant or his conspirator Belansky; (4) defendant's conduct in coming forward with $1,380 when Putnam requested the money which, impliedly, had come from a sale just made by Owens; (5) Owens' conduct in going into the apartment on two occasions before consummating the sale.

The circuit court did not err in overruling the various hearsay objections made by the defendant.

■■ Defendant moved pretrial to suppress all evidence seized by the officers upon their entry into the apartment where defendant, Belansky, and their female companion were arrested, as well as all evidence obtained as a result of the entry. His contention then and now is based on theories that (1) the entry without a warrant was not justified by exigent circumstances; (2) the entry was unnecessarily made without the officers knocking or announcing their presence; and (3) it was done without what he calls "offender probable cause." The trial court denied the motion, and we conclude that the court did not err in doing so.

At the hearing on the motion to suppress, the defendant produced evidence to show that the entry was made without a warrant. The State then put on the testimony of Putnam, Bane, and Sporcich which, in general paralleled their testimony at trial except that Bane's testimony began with his receipt of a telephone call from Owens on January 28, 1985, and did not include any reference to their prior communications. The testimony showed that a sale had been made by Owens, he

had pointed out the apartment in the building where the LSD had come from, and Owens' statement that the source was about to leave.

We need not discuss the question of whether the fact that defendant had no ownership or tenant's interest in the apartment where the officers' entry was made negates his standing to move to suppress the evidence. We determine that, regardless, the existence of exigent circumstances justified the nonconsensual entry without a warrant. The doctrine of exigent circumstances was set forth in *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371. Then, in *People v. Abney* (1980), 81 Ill. 2d 159, 170-73, 407 N.E.2d 543, 548-49, the Illinois Supreme Court discussed various factors significant in determining the existence of exigency. They included: (1) a reasonable belief in the need for prompt action; (2) the absence of deliberate or unjustified delay by the police officers during which time a warrant could have been obtained; and (3) a belief that the suspect was armed and exhibited some sign of violent character. Other factors which that court deemed to be of importance in determining whether officers in that case had acted reasonably in making a warrantless entry were: (1) a clear showing of probable cause based on reasonably trustworthy information necessary to justify warrantless law-enforcement activities; (2) clear identification of the defendant; (3) a strong reason to believe that the defendant was on the premises entered; and (4) the entry, though warrantless and nonconsensual, was peaceably made.

■ In holding the police procedure actually employed was proper, the *Abney* court believed it significant that "the officers who entered defendant's home were presented an unusual opportunity to quickly apprehend an armed suspect and thereby prevent his escape, avoid exhaustion of law-enforcement resources, and help ensure against further endangerment to the community." (81 Ill. 2d 159, 169, 407 N.E.2d 543, 547.) The *Abney* factors are not exclusive and need not all be present in every case where a warrantless entry is justified. (*People v. Cobb* (1983), 97 Ill. 2d 465, 484, 455 N.E.2d 31, 39.) Other identified exigent factors include the existence of a serious crime coupled with a reasonable likelihood of flight. *Dorman v. United States* (D.C. Cir. 1970), 435 F.2d 385 (*en banc*); *People v. Yates* (1983), 98 Ill. 2d 502, 456 N.E.2d 1369.

■ Here, probable cause clearly existed, as Owens had gone to the apartment purporting to get LSD and had returned with a substance purporting to be LSD. The need for prompt action was clear. The evidence indicated that the source was likely to leave. The officers did not know who the source was and could not have arrested everyone who might have left the apartment while waiting for the issuance of a war-

rant. Moreover, their presence was revealed as soon as they arrived on the scene on the ground where a sale had been made. With any lapse of time, the source could easily have destroyed any contraband remaining in the apartment. While no evidence existed that persons in the apartment were armed, common sense required the officers to be wary, that some of the occupants would be likely to be armed. Many people who go from place to place selling narcotics are armed or have armed persons with them. Moreover, where, as here, a felony is committed in the presence of the officers near the place to be entered, the circumstances are more likely to be exigent. *People v. Eichelberger* (1982), 91 Ill. 2d 359, 369, 438 N.E.2d 140, 144-45.

 While failure of police to knock and announce their authority and purpose for entering a house is not a *per se* violation of the fourth amendment, it is nevertheless a factor for consideration in determining whether a subsequent arrest was constitutionally reasonable. (*People v. Wolgemuth* (1977), 69 Ill. 2d 154, 370 N.E.2d 1067, *cert. denied* (1978), 436 U.S. 908, 56 L. Ed. 2d 408, 98 S. Ct. 2243.) The purpose of the so-called "knock and announce" requirement is to notify those persons inside the residence of the officer's presence in order to afford an opportunity to respond so that violence can be averted and privacy protected. (69 Ill. 2d 154, 370 N.E.2d 1067.) However, here, the officers entered through an unlocked door. A minimum of force was used. Under similar circumstances in *Abney*, the court commented that such an entry was not of the type that has led courts to disapprove warrantless entries. (*People v. Abney* (1980), 81 Ill. 2d 159, 173, 407 N.E.2d 543, 549-50; see also *People v. Bares* (1981), 97 Ill. App. 3d 728, 737, 423 N.E.2d 538, 544 (entry through an unlocked window).) The failure of the officers to knock or announce their entry here did not vitiate the seizures made or the evidence obtained because of the entry.

 Defendant's assertion that a lack of "offender probable cause" existed has no merit. He contends that, because the officers did not know who defendant was, they had no authority to enter the apartment. However, they had probable cause to believe that LSD was in the apartment and that one or more persons in the apartment were possessing it with the intent that it be delivered and sold. He relies upon the pre-*Payton* and pre-*Abney* cases of *People v. Bankhead* (1963), 27 Ill. 2d 18, 187 N.E.2d 705, and *People v. Harshbarger* (1974), 24 Ill. App. 3d 335, 321 N.E.2d 138. The latter case concerned the arrest of an individual when no probable cause existed rather than, as here, the entry into a room where probable cause existed that an occupant was committing an offense but the identity of the offender was unknown.

 ██ Calculated criminal drug conspiracy is a Class X felony

(Ill. Rev. Stat. 1985, ch. 56½, par. 1405(a)) punishable by a prison sentence of 6 to 30 years (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(3)). Defendant maintains that his sentence was excessive because (1) the sentencing judge stated that the evidence indicated defendant was a major drug dealer and the court had no evidence to refute that; (2) his sentence was disparate to that given Belansky; and (3) the sentence did not reflect defendant's rehabilitative potential.

The court's concern that defendant was likely to be a major drug dealer was supported by the evidence that he was going from Danville to another community to make another sale. Belansky had received a sentence of eight years' imprisonment. However, he had entered a plea of guilty. (See *People v. Massarella* (1979), 80 Ill. App. 3d 552, 400 N.E.2d 436.) Moreover, no showing was made that Belansky was going to be involved in another sale in another community. The position of defendant in the drug trade appeared to be closer to the initial sources of drugs than that of Belansky.

While defendant did not have a substantial record of prior criminal conduct, rehabilitative potential need not be a controlling factor in sentencing. By its inclusion in schedule I of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1204(d)(10)), the General Assembly listed LSD as among those drugs intended to be most effectively controlled by penalizing "heavily the illicit traffickers or profiteers of controlled substances, who propagate and perpetuate the abuse of such substances with reckless disregard for its consumptive consequences upon every element of society." (Ill. Rev. Stat. 1985, ch. 56½, par. 1100(3).) Such heavy penalties are legislatively justified due to the "rising incidence in the abuse of drugs and other dangerous substances and its resultant damage to the peace, health, and welfare of the citizens of Illinois." (Ill. Rev. Stat. 1985, ch. 56½, par. 1100.) Thus, where the potential dangers to the community are great because narcotic drugs of high toxicity are involved, steps have been taken to impose severe penalties against sellers or suppliers of "large" quantities of controlled substances. See *People v. Vincent* (1980), 92 Ill. App. 3d 446, 415 N.E.2d 1147; *People v. Rodriguez* (1978), 59 Ill. App. 3d 769, 376 N.E.2d 460.

The circuit court did not abuse its discretion in imposing sentence. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

The conviction and sentence are affirmed.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.