THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN P. FOSTER, Defendant-Appellant.

First District (4th Division)—No. 1—92—0833

Opinion filed May 19, 1994.

Rita A. Fry, Public Defender, of Chicago (Z. Peter Tokatlian, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Sheila McGinnis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Brian P. Foster, was charged by indictment with first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1), attempted first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 8—4), armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2), and aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4). Following a jury trial in the circuit court of Cook County, he was found guilty as charged and sentenced to concurrent prison terms of 28 years for murder and 12 years for attempted murder. Defendant appeals, alleging that (1) the trial court improperly failed to tender a second degree murder instruction; (2) he was not proved guilty beyond a reasonable doubt; and (3) his sentence is excessive and should be reduced.

We affirm.

The facts presented at trial reveal that on December 31, 1988, Donnie Derrick hosted a New Year's Eve party at the Ascot Hotel in Chicago. Approximately 80 guests attended the party including Derrick's friends, Kyle Lavalais, Ben Rivers, Tim Thorton and Victoria Wharton. Defendant and his friends, Rondell Davis and Brian Madson, were also present. At some point during the evening, a fight occurred between Derrick and his friends, and defendant and his friends. Thereafter, the police were summoned but no arrests were made.

On February 9, 1989, Wharton was celebrating her 21st birthday with Derrick, Lavalais, Rivers, and Thorton at the Godfather Lounge in Chicago. While there, Rivers recognized defendant, Davis, and Madson from the New Year's Eve altercation. When Rivers informed his friends that defendant and his friends were at the lounge, they decided to leave. As the group exited the lounge, defendant and his friends followed them. Once outside the lounge, defendant and his friends pulled out guns and began harassing Wharton and her friends. Wharton and Lavalais returned to the lounge and telephoned police.

Meanwhile, defendant and his friends continued to harass Derrick, Rivers and Thorton outside the lounge. At approximately 3:30 a.m., lounge security personnel broke up the crowd which began to form in front of the lounge. Defendant, Davis, and Madson left the lounge parking lot and entered a car which was parked down the street from the lounge. Moments later, the police arrived and after speaking with Wharton and her friends, they advised them to leave the area. Derrick and Thorton drove away in Thorton's car and were followed by Rivers, Wharton and Lavalais in Lavalais' car.

The two cars proceeded south on Stony Island Avenue to 95th Street and entered the left turn lane. When the two cars stopped at the traffic light, Rivers noticed that defendant and Madson, in ,a maroon Cadillac, had driven up behind Lavalais' car. After the maroon car stopped, Rivers saw defendant and Madson exit their vehicle. Rivers began to exit Lavalais' car and attempted to tell Thorton and Lavalais to drive away, but defendant and Madson began shooting. Rivers then reentered Lavalais' car and Thorton and Lavalais began to drive away.

As Lavalais was driving away, Rivers looked out of the rear window and observed that defendant and Madson each had guns. At some point, Rivers saw the maroon car pull up beside Thorton's car. He also saw defendant hanging from the maroon car passenger side window, firing a gun at Thorton's car. Rivers then saw the maroon

Cadillac speed past Thorton's car and pull up beside Lavalais' car. Rivers heard more shots fired from the Cadillac and, when he ducked, he heard the driver's window in Lavalais' car shatter. When he looked up, he noticed that Wharton was slumped down in the front seat. Rivers attempted to shake Wharton but noticed that she had been shot in the head. Lavalais immediately drove to the hospital where Wharton was pronounced dead. According to Rivers, neither he, Derrick, Lavalais, Wharton, nor Thorton shot or aimed a gun at defendant, Madson, or Davis on February 9, 1989.

Thorton and Derrick both testified at trial that while Thorton was driving away from the intersection at 95th Street and Stony Island Avenue on February 9, 1989, defendant and Madson drove up beside Thorton's car. Derrick stated that he saw defendant hanging from the maroon car window with a gun in his hand. Several shots were fired from the maroon car into Thorton's car, one of which shattered Thorton's car window and struck Derrick in the mouth. Thorton drove Derrick home, where his mother called the police. Paramedics were also summoned and Derrick was taken to the hospital where he underwent surgery for extensive damage to his mouth. He remained hospitalized for five days during which time he spoke to police and positively identified defendant as one of the shooters.

On February 11, 1989, Lavalais, Rivers and Thorton viewed a police lineup and each positively identified defendant as one of the shooters. Likewise on February 22, 1989, Derrick, Rivers and Thorton viewed a lineup at the police station. Each identified defendant as one of the persons who pulled a gun on them at the Godfather Lounge on February 9, 1989, and who also shot at them while driving later that morning.

At trial, defendant testified that on February 9, 1989, he was present at the Godfather Lounge with Madson and Davis. He stated that while there, he recognized Rivers and his friends from the New Year's Eve party where he was injured by Rivers. According to defendant, he and his friends were harassed by Rivers and his friends at the lounge. Defendant and his friends attempted to leave but were followed by Rivers, who pulled out a gun. Soon thereafter the police arrived and the group dispersed.

Defendant further testified that later that evening, he asked co-defendant Madson to drive him to his sister's house. They drove south on Stony Island Avenue to 95th Street and while stopped at a traffic light, defendant saw Rivers get out of a car which had pulled up behind them. According to defendant, Rivers began shooting at them and Madson began shooting back. Madson reentered his car

and drove away but was followed by the car in which Rivers was riding. When the car drove up next to the passenger side of Madson's car, Madson shot over defendant's head out of the passenger window. Defendant stated he never had a gun in his hand that evening.

Chicago police detective Frank Glynn testified at trial that he investigated the shooting incident. During his investigation, he examined the maroon Cadillac driven by defendant on February 9, 1989, and found no bullet holes. However, he found one live round of ammunition for a .38-caliber handgun inside the car, but no weapons were recovered. Chicago police officer Robert Peron testified at trial that he searched Thorton's car. He recovered a bullet from the door panel of Thorton's car, and also two .32-caliber shell casings at the intersection of 95th Street and Stony Island Avenue, the scene of the incident.

Also at trial, a number of character witnesses, including defendant's mother, Sylvia Foster, testified in defendant's behalf. Ms. Foster stated that she learned that defendant was wanted by police on February 9, 1989. However, she did not see her son until February 12, 1989, after he had turned himself in to the police.

At the close of the evidence, a jury instruction conference was held during which defendant requested that a second degree murder instruction, *inter alia*, be tendered to the jury. In response, the People argued that no evidence supported the giving of such an instruction. After requesting that defendant tender a proposed instruction on second degree murder, the trial court stated it would review the applicable case law and rule on whether to tender the instruction the following day.

At the hearing held the next day, the trial court denied defendant's request to instruct the jury on second degree murder. Also, defendant failed to tender the proposed second degree murder instruction as requested by the trial court. Thereafter, the trial court instructed the jury, which found defendant guilty as charged. Subsequent to a hearing on defendant's motion for a new trial, the trial court sentenced defendant to concurrent prison terms of 28 years for first degree murder of Victoria Wharton and 12 years for attempted murder of Donnie Derrick. Defendant now appeals.

■ Defendant first contends that the trial court improperly refused to tender a second degree murder instruction. However, he neither tendered an instruction on second degree murder, nor did he include any issue regarding jury instructions in his post-trial motion. Supreme Court Rule 366(b)(2)(i) provides that a litigant may not challenge the trial court's failure to give a jury instruction where the party did not tender the instruction. (134 Ill. 2d R. 366(b)(2)(i).) More-

over, failure to raise an instructional issue in a post-trial motion waives the issue for purposes of review. (*People v. Smith* (1993), 242 Ill. App. 3d 344, 346-47.) Consequently, defendant has waived the issue for purpose of review.

Furthermore, we reject defendant's argument that the issue can be reviewed under the plain error doctrine pursuant to Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). We decline to do so because we do not believe that the evidence was closely balanced or that any substantial defect occurred which necessitates invocation of the plain error rule. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 198.) Additionally, we reject defendant's argument that he was denied the effective assistance of counsel due to defense counsel's failure to properly preserve the issue for review. Given the overwhelming evidence of defendant's guilt, no reasonable probability exists that but for counsel's alleged unprofessional errors the outcome at trial would have been different. Therefore, defendant's ineffective assistance of counsel claim must fail. *Enoch*, 122 Ill. 2d at 202.

Next, defendant argues that his conviction should be reversed because he was not proved guilty beyond a reasonable doubt. In support, he asserts that the testimony of four eyewitnesses was unsatisfactory and therefore insufficient to sustain his conviction. We disagree.

A reviewing court will not overturn a conviction unless the evidence is so improbable or unsatisfactory that it raises a reasonable doubt as to defendant's guilt. (*People v. Steidl* (1991), 142 Ill. 2d 204, 226.) When faced with a challenge as to the sufficiency of the evidence, the reviewing court determines whether any rational trier of fact could have found defendant guilty beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) Moreover, the determinations made by the trier of fact concerning the credibility of witnesses and the weight to be assigned to their testimony as well as inferences to be drawn therefrom are preserved through a legal conclusion that upon review the evidence is viewed in the light most favorable to the prosecution. *People v. Nitz* (1991), 143 Ill. 2d 82, 95-96.

In the present case, we are fully convinced that defendant was proved guilty beyond a reasonable doubt. Three eyewitnesses to the crime positively identified defendant as one of the individuals who fired shots at Thorton's car. It is well settled that consistent and positive eyewitness identification is sufficient to sustain a conviction for murder. (*People v. Wofford* (1987), 156 Ill. App. 3d 238, 246.) After reviewing evidence in the light most favorable to the State, we cannot agree with defendant that the identifications were inherently suspect.

Thus, we hold that defendant was proved guilty beyond a reasonable doubt.

■ Lastly, defendant argues that the trial court abused its discretion in sentencing him to a 28-year prison term. He suggests that the trial court failed to give sufficient consideration to his lack of a prior criminal record and his potential for rehabilitation.

A trial court determines the sentence to impose in a given case, and its decision will not be disturbed on review absent an abuse of discretion. (*People v. Gonzalez* (1992), 151 Ill. 2d 79, 89.) When imposing sentence, a trial court need not recite all factors it considered or the weight given to each factor. (*People v. Partin* (1987), 156 Ill. App. 3d 365, 373.) On review, it is presumed that the trial court properly considered all mitigating factors and rehabilitative potential before it, unless there is an affirmative showing to the contrary. *People v. McClellan* (1992), 232 Ill. App. 3d 990, 1012.

In the present case, the trial court stated on the record that it considered all matters in aggravation and mitigation. The trial court specifically noted that it considered defendant's history and character prior to imposing sentence upon him. We note that defendant's sentence is within the 20- to 60-year statutory range for first degree murder. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1).) On review, a sentence which is within the statutory range is entitled to great deference. (See *People v. Perruquet* (1977), 68 Ill. 2d 149.) Because we believe the imposition of a 28-year prison term for defendant's act of murder was not an abuse of discretion, we will not disturb defendant's sentence.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

HOFFMAN and THEIS, JJ., concur.