THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MISAEL GARCIA, Defendant-Appellant.

First District (3rd Division)   No. 1—96—2812

Opinion filed May 20, 1998.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo and Kristin L. Dovrsky, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William Toffenetti, and Karan M. Giliberto, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:
The defendant, Misael Garcia, was convicted by a jury of armed

violence (720 ILCS 5/33A—2 (West 1992)) and possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(A) (West 1992)). He was sentenced to 10 years' imprisonment for each offense, to be served concurrently. On appeal the defendant contends that the trial court erred in denying his motion to quash his arrest and suppress evidence; that he was not proved guilty beyond a reasonable doubt; and that the trial court abused its discretion in sentencing him. For the reasons discussed below, we affirm defendant's conviction but vacate and modify his sentence.

The evidence presented by the State at the hearing on the motion to suppress showed that on October 5, 1993, at approximately 8:30 p.m., Chicago police officers Paul Paulin and William Martinez were driving eastbound on West Beach Road in an unmarked police car. Officer Paulin saw Jose Zacharias, from about 20 or 30 feet away, standing on the front porch of 1624 West Beach, drinking a bottle of Corona beer. Paulin, who had arrested Zacharias the day before, knew that Zacharias was 16 years old and did not live at that address. Paulin and Martinez exited the police car, walked up the stairs of the porch, and arrested Zacharias for underage drinking. While handcuffing Zacharias on the porch, Paulin looked through the glass storm door (the front door was open) into the house and saw the defendant and codefendant Charles Alvarez sitting in the kitchen, which was approximately 15 or 20 feet from the storm door, at a table upon which a scale and handgun lay. He saw the defendant place a package of white powder onto the scale and saw Alvarez take the package off the scale. The officers entered the house through the unlocked storm door, and defendant fled through the back door. Upon entering the house, Martinez saw three additional individuals sitting in the living room. The officers arrested Alvarez and recovered a Browning 9 millimeter revolver and several plastic bags containing cocaine. Garcia was arrested by Officer Paulin several days later.

At trial, Officer Paulin gave testimony that was substantially similar to that which he gave at the hearing on the motion to suppress. In addition, he testified at trial that at the time he recognized Zacharias as the person on the porch at 1624 West Beach there was no outside light on the porch; light was illuminating from inside the house and from the streetlight. Paulin testified that, after arresting Zacharias, he looked inside the house for his own protection because the wooden door was open and lights were on inside. He stated that he recognized the defendant before the defendant exited through the back door and did not give chase because he would have had to pass the three men in the living room as well as Alvarez, who had access to the gun on the table. Paulin's main concern as he entered the

house was to secure the handgun on the table where the defendant and Alvarez had been sitting. Paulin described the items recovered from the kitchen table as: one plastic bag containing two rocks, a smaller bag containing loose cocaine, five smaller bags containing rock cocaine, a Browning 9 millimeter revolver with 12 live rounds in the clip, two scales, and defendant's Mexican passport, birth certificate and "various ID's."

Daniel Wolberg of the Chicago police department crime lab testified that the total weight of all of the items in the evidence bag was 58.6 grams. The largest single item weighed 35.27 grams. Wolberg tested the latter sample and determined that it was cocaine. He did not test any of the other items for the presence of cocaine or any other controlled substance. Wolberg retested the sample because the original chemist who handled the case was on maternity leave. That chemist's report showed that she tested the items and conducted two batteries of tests which showed that the items tested positive for cocaine.

Karen Morrissette of the Chicago police department, who was qualified as an expert to testify regarding personal use and transactional use of narcotics, opined that a "user" generally purchased a quarter to one gram of cocaine. In her opinion, a person having 35.27 grams or 58.6 grams of cocaine would be a dealer.

In defense, defendant's mother, Ramona Garcia, testified through an interpreter that the defendant was with her at her home at 1621 West Beach on October 5, 1993, from 7 p.m. to 10 p.m. The defendant was present the entire time and was celebrating his birthday with his mother and siblings. The defendant's mother lived across the street from the defendant.

Francisco Romo testified that he had been invited by the defendant to come over to the defendant's house at 1624 West Beach on October 5, 1993, to watch the World Series baseball game. When he arrived there between 8 and 8:30 p.m. with his brother, George, and his uncle, Nick, the defendant was not present. A "kid" opened the door for them. At about 8:30 p.m., while the three men were seated in the living room watching the baseball game, the "kid" went to throw out the garbage. A police officer, who was holding the "kid" and pointing a gun at his side, knocked on the door, which was closed, and told them to open it. Romo's brother, George, opened the door. Romo testified that he could see the officer through the small window at the top of the door as he was seated on the couch. Romo testified that the officers searched the entire house after telling them to be still and sit on the floor. Romo testified that when the officers arrived, the defendant was not at home, no one was seated at the kitchen

table and there was nothing on the table. He testified that he did not know codefendant Alvarez and had never talked to him. Romo recalled speaking to an investigator from the State's Attorney's office but denied telling him that the defendant and another person were present at 1624 West Beach but left to buy beer. He also denied telling the investigator that the defendant invited him over at about 8:10 or 8:30 p.m. or that Romo was with his brother when that invitation was made.

The defendant testified that prior to October 5, 1993, he had been arrested by Officer Paulin on a misdemeanor charge. He stated that October 5 was his birthday and that on October 5, 1993, he lived at 1624 West Beach. He stated that he was not present in his home on the evening of October 5, 1993, when the officers came to his house. He stated that he left his house at approximately 6:30 p.m. to go to his mother's house. Jose Zacharias was in his house at that time and defendant told Zacharias that some friends would be coming over. Sometime between 6:30 p.m. and 7 p.m. the defendant asked Romo to come over in about an hour to watch the World Series. The defendant stated that he was at his mother's between 7 p.m. and 10 p.m. even though he had invited Romo to watch the World Series at his house.

The defendant testified that he was arrested on the charges that were the subject of the instant proceedings on October 15, 1993, when he went to court on the earlier disorderly conduct charge. He stated that the police did not arrest him at his home although he had been present there prior to his October 15 court appearance. The defendant denied having any knowledge of ownership of the gun and the cocaine that had been recovered from his house. He also denied knowing codefendant Alvarez, although he testified that he had seen Alvarez in the neighborhood and had spoken with him. He also testified that when he left his house on the evening of October 5, 1993, his identification cards and passport were upstairs in a dresser drawer in his room.

Jorge Varzenas testified that on October 5, 1993, he lived at 1633 West Beach, across the street from the defendant. At approximately 8:30 p.m., he was in front of his house with his children. He saw some plainclothed police officers walking around in front of and going in and out of defendant's house. Varzenas saw an officer, who he believed to be Paulin, exit the house and call to codefendant Alvarez, who was walking westbound on Beach with three girls. Alvarez was taken inside the house and, when he came out, was handcuffed. Varzenas also testified that he lived at 1633 West Beach for three years and during that time had never seen Alvarez and the defendant together. Varzenas admitted to talking to an investigator from the

State's Attorney's office but denied telling him that he had seen the defendant and Alvarez together on occasion.

Fabiola Lopez testified that she was with Charles Alvarez, Justinia Gomez and Lupe Lopez at approximately 8:30 p.m. on October 5, 1993. They were walking westbound on the 1600 block of West Beach. Lopez testified that an Hispanic officer, who was standing behind a gate at 1624 West Beach, called Alvarez over, grabbed him and arrested him. Lopez recognized the Hispanic officer, having previously seen him in the neighborhood. She stated that she had been with Alvarez for approximately 20 minutes prior to his arrest. She also testified that she knew the defendant and that she had not seen him on the evening of October 5, 1993. Lopez acknowledged that she was interviewed by an investigator from the State's Attorney's office. She denied telling that person that she saw the defendant on Beach Street on the evening of October 5, 1993; that he told her he was going home to get a sweater; and that he was arrested when he walked up to the front door of his house. She also denied telling the investigator that she had not seen Alvarez on October 5, 1993.

In rebuttal, Harvey Carpenter, an investigator for the investigation bureau of the Cook County State's Attorney's office, testified that he interviewed Frank Romo on July 25, 1995. Romo told him that the defendant came to his house between 8:10 and 8:35 p.m. to invite him and his brother, George, over to watch the baseball game. Romo also stated that the defendant was present when they went over to defendant's house but that the defendant left the house with another individual to buy beer.

George Mays, an investigator for the Cook County State's Attorney's office, testified that he interviewed Fabiola Lopez on August 21, 1995. Lopez told Mays that she saw the defendant on October 5, 1993, on the 1600 block of Beach and that the defendant told her he was going home to get a sweater. She told him that the defendant was arrested as he opened his front door. Lopez did not tell Mays that she was with defendant Alvarez or that she saw Alvarez being arrested.

Mays also testified that he interviewed Jorge Varzenas on October 19, 1995. Varzenas told Mays that he had seen the defendant and codefendant Alvarez together in the neighborhood. Varzenas told him that he saw Alvarez walk up the porch at 1624 West Beach and that the police pulled him inside and arrested him.

Officer William Martinez testified that he was working with his partner, Officer Paulin, on October 5, 1993, at approximately 8:30 p.m. in the area of 1624 West Beach. He stated that before they entered defendant's house, the wooden door to the house was open

and the storm door was closed. Martinez testified that he saw defendant Garcia inside the house. He also saw defendant exit the house through the back door as he and Paulin entered through the front door. Martinez stated that he could see the defendant even though Paulin and Jose Zacharias were walking in front of him.

Based upon this testimony, the jury found the defendant and codefendant Alvarez guilty of armed violence predicated on possession and possession of a controlled substance with intent to distribute. The defendant was sentenced to two concurrent terms of 10 years for each count, while Alvarez was sentenced to two concurrent terms of six years for each count.

## I. Motion to Quash Arrest and Suppress Evidence

The defendant first argues that the trial court erred in failing to quash his arrest and suppress evidence because the warrantless entry into his home and seizure of evidence were not justified by the plain view doctrine or by exigent circumstances.

■ When presenting a motion to suppress, the defendant has the burden of proving that the search and seizure were unlawful. 725 ILCS 5/114—12(b) (West 1992). The function of the trial court at the hearing on the motion to suppress is to determine the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. *People v. Galvin*, 127 Ill. 2d 153, 535 N.E.2d 837 (1989); *People v. Wicks*, 236 Ill. App. 3d 97, 603 N.E.2d 594 (1992). The trial court's determination on a motion to suppress is entitled to great deference and will not be overturned unless it is manifestly erroneous. *Galvin*, 127 Ill. 2d 153, 535 N.E.2d 837; *People v. Smith*, 266 Ill. App. 3d 362, 640 N.E.2d 647 (1994).

■ It is axiomatic that, absent a warrant, a police officer's entry into a private home to effectuate an arrest is presumptively unreasonable under the fourth amendment. U.S. Const., amend. IV. *Payton v. New York*, 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). A warrantless seizure of evidence found in plain view does not constitute an intrusive invasion into private property in violation of the fourth amendment. *People v. Pierini*, 278 Ill. App. 3d 974, 664 N.E.2d 140 (1996). To establish a lawful plain-view seizure, three requirements must be met: (1) the officer must be lawfully present in the location from which he can plainly see the evidence; (2) it must be immediately apparent that the object in plain view is evidence; and (3) the officer must have a lawful right of access to the object. *Pierini*, 278 Ill. App. 3d at 977, 664 N.E.2d at 143. A lawful right of access to the object may be satisfied by the exigent circumstances exception to the warrant requirement. *Pierini*, 278 Ill. App. 3d at 977-78, 664 N.E.2d at 143.

Factors relevant to a determination of whether exigent circumstances exist include whether:

"(1) the crime under investigation was recently committed; (2) there was any deliberate or unjustified delay by the police during which time a warrant could have been obtained; (3) a grave offense was involved, particularly a crime of violence; (4) there was reasonable belief that the suspect was armed; (5) the police officers were acting on a clear showing of probable cause; (6) there was a likelihood that the suspect would escape if he was not swiftly apprehended; (7) there was strong reason to believe the suspect was in the premises; and (8) the police entry was made peaceably, albeit nonconsensually." *People v. Williams*, 161 Ill. 2d 1, 26, 641 N.E.2d 296, 306 (1994).

The fundamental guiding principle with respect to exigency is reasonableness, and in determining whether the police officers acted reasonably, the court will look to the totality of the circumstances confronting the officers at the time the entry was made. *Williams*, 161 Ill. 2d at 26, 641 N.E.2d at 306.

■ Here, the officers' seizure of evidence from the defendant's house was lawful under the plain view doctrine. The three elements required under that doctrine were established by the testimony of officers Paulin and Martinez, whom the trial court found to be more credible. First, it is undisputed that Officers Paulin and Martinez were lawfully present on the front porch of defendant's house. They were there to arrest Zacharias for underage drinking. Second, evidence of a crime was immediately apparent. Paulin testified that he was able to see into defendant's house from the porch through the storm door because the front door was open. Paulin, who was closest to the door, could plainly see the defendant and Alvarez weighing a substance which, based upon his experience as a police officer, he believed to be cocaine. That substance as well as the scales and gun present on the table were evidence of a crime. Third, the officers had a lawful right of access to that evidence based upon exigent circumstances. Several factors established exigent circumstances. An offense was taking place in the officers' presence. See *People v. Eichelberger*, 91 Ill. 2d 359, 369, 438 N.E.2d 140, 145 (1982); *People v. Masters*, 155 Ill. App. 3d 1015, 1024, 508 N.E.2d 1163, 1169 (1987) (commission of an offense in officers' presence constitutes exigent circumstances and justifies warrantless entry). There was no deliberate or unjustified delay by the officers during which time they could have obtained a search warrant, especially since the officers did not have probable cause to obtain a warrant prior to viewing the defendant and Alvarez. See *Eichelberger*, 91 Ill. 2d at 369, 438 N.E.2d at 145.

The suspects were armed; a gun was lying on the table near where they were sitting. The officers were acting on a clear showing of probable cause since Paulin saw the alleged contraband and saw the suspects weighing a white powder. Finally, the officers' entry into defendant's house was peaceful since the door to the house was open and the outer storm door was unlocked.

The facts in the instant case are distinguishable from *People v. Hassan*, 253 Ill. App. 3d 558, 624 N.E.2d 1330 (1993), a case relied upon by the defendant. In that case, the defendant was arrested in his front yard as he was fleeing from police officers to whom he had sold drugs. The officers' entry into defendant's home and seizure of evidence occurred after defendant's arrest, and that entry was not made for the purpose of apprehending the defendant. Here, unlike in *Hassan*, the officers' entry into defendant's home occurred for the purpose of apprehending the defendant. See *Hassan*, 253 Ill. App. 3d at 571, 624 N.E.2d at 1339 (finding that exigent circumstances generally applies to situations where entry occurs for the purpose of apprehending the suspect). As an additional distinction, in *Hassan*, the court noted that since the defendant had been taken into custody prior to the officers' entry into his home, that entry could not have been premised on a fear by the officers that the defendant posed a risk of harm to others. Here, there was testimony that the officers' entry into defendant's home was premised in part on the presence of a gun near the defendant and Officer Paulin's fear for his safety. Officer Paulin testified that he saw a weapon on the kitchen table near the defendant and Alvarez and that he feared that they would use it. Finally, the instant case is distinguishable from *Hassan* because in *Hassan* the officers had time to secure a warrant before making their drug purchase from the defendant. Prior to that purchase, the officers conducted a surveillance of defendant's house and observed several individuals purchase drugs from the defendant. After making those observations, the officers went to the police station to obtain money to use in making their drug purchase. They could have obtained a warrant during that time since their observations of the other drug purchases would have supported a probable cause finding. Here, as discussed above, Officers Paulin and Martinez did not have probable cause to obtain a warrant before they arrived at defendant's house. Probable cause did not arise until Officer Paulin saw the defendant commit an offense. That observation not only supplied probable cause to arrest the defendant and Alvarez but it demanded prompt police action, thus constituting exigent circumstances. *Eichelberger*, 91 Ill. 2d 359, 438 N.E.2d 140.

Nor does the case of *People v. Condon*, 148 Ill. 2d 96, 592 N.E.2d

951 (1992), also cited by the defendant, compel suppression of evidence in the instant case. *Condon* involved an exigent circumstances inquiry for purposes of determining whether officers executing a search warrant were excused from the "knock and announce" requirement.[1] Here, as in *Condon*, no testimony established a reasonable belief by the police officers that the drugs in the premises would be destroyed. However, here, unlike in *Condon*, other factors existed to establish exigency. See *Eichelberger*, 91 Ill. 2d 359, 438 N.E.2d 140; *Pierini*, 278 Ill. App. 3d at 978, 664 N.E.2d at 143-44; *Masters*, 155 Ill. App. 3d at 1023, 508 N.E.2d at 1168 (not all exigent circumstance factors must be present in any particular case in order to establish reasonableness of warrantless search). As discussed above, there was testimony establishing the presence of a gun and an officer's fear for his safety. The commission of a crime was observed in the presence of a police officer, and that observation demanded prompt police action. See, *e.g., Eichelberger*, 91 Ill. 2d 359, 438 N.E.2d 140. The officers did not have probable cause to obtain a warrant prior to viewing the commission of the offense. Finally, the officers' entry into the home was peaceful since the door was open and unlocked. Under the totality of these circumstances, entry into defendant's house without a warrant was reasonable. *Williams*, 161 Ill. 2d at 26, 641 N.E.2d at 306; *Eichelberger*, 91 Ill. 2d 359, 438 N.E.2d 140; *Pierini*, 278 Ill. App. 3d at 978, 664 N.E.2d at 144; *Masters*, 155 Ill. App. 3d at 1024, 508 N.E.2d at 1169. Thus, the trial court did not err in denying defendant's motion to suppress.

## II. Reasonable Doubt

The defendant next argues that he was not proved guilty beyond a reasonable doubt because the only evidence that established his presence during the alleged commission of a crime came from the testimony of Officers Paulin and Martinez which was contradicted by all of the defense witnesses and by the officers' conduct in failing to give chase.

■ "A criminal conviction will not be set aside on review unless

---

[1]The defendant argues that the "knock and announce" requirement was violated in the instant case because the officers did not knock before entering. We disagree. As the officers entered defendant's house through an open and unlocked door and used minimal force to gain entry, their entry was peaceful, and any failure by the officers to knock and announce their entry did not vitiate the seizures made without a warrant. See *People v. Masters*, 155 Ill. App. 3d 1015, 508 N.E.2d 1163 (1987), citing *People v. Abney*, 81 Ill. 2d 159, 407 N.E.2d 543 (1980).

the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt." *People v. Jimerson*, 127 Ill. 2d 12, 43, 535 N.E.2d 889, 903 (1989). When the sufficiency of the evidence is challenged on appeal, the relevant inquiry is whether, when viewed in the light most favorable to the State, any rational trier of fact could have found all of the elements of the crime proved beyond a reasonable doubt. *E.g., Jimerson*, 127 Ill. 2d at 43, 535 N.E.2d at 903. It is for the trier of fact to assess the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from that testimony and to resolve conflicts in their testimony. *E.g., People v. Bedell*, 253 Ill. App. 3d 322, 624 N.E.2d 1308 (1993); *People v. Steidl*, 142 Ill. 2d 204, 568 N.E.2d 837 (1991). It is not the function of the reviewing court to retry the defendant or to substitute its judgment for that of the trier of fact. *E.g., People v. Hill*, 276 Ill. App. 3d 683, 658 N.E.2d 1294 (1995).

■ Here, the testimony of Officers Paulin and Martinez established defendant's guilt beyond a reasonable doubt. While their testimony was contradicted by testimony from the defense witnesses, the jury made credibility determinations in favor of the officers. In making those determinations, the jury was free to consider the testimony of the State's rebuttal witnesses which impeached several of the defense witnesses. Moreover, contrary to defendant's assertion, the fact that officers Paulin and Martinez did not chase the defendant or arrest him for 10 days does not make their testimony incredible. The officers testified that they knew the defendant's identity before he fled. They had a clear view of him as he sat at the table and knew that they would be seeing him in court on another criminal matter several days later. Officer Paulin also testified that, rather than giving chase to the defendant, his priority was to protect himself by retrieving the gun on the table. We cannot say that the officer's testimony was so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt. *Steidl*, 142 Ill. 2d 204, 568 N.E.2d 837; *Jimerson*, 127 Ill. 2d at 43, 535 N.E.2d at 903.

## III. Sentence

The defendant raises two arguments with respect to his sentence. He first argues that the term of 10 years is excessive in light of his age, lack of history of violent criminal activity, rehabilitative potential and his codefendant's lesser sentence of six years. He also argues that the trial court improperly considered his employment history and constructive possession of a handgun. Second, the defendant argues that the 10-year term for unlawful possession of a controlled substance with intent to deliver should be vacated since it merged

into the conviction for armed violence predicated on unlawful possession.

### A. Ten-Year Sentence[2]

■ The determination of an appropriate sentence is within the discretion of the trial court, which is normally in a superior position during the trial and the hearing in aggravation and mitigation to make that determination. *People v. Cabrera*, 116 Ill. 2d 474, 508 N.E.2d 708 (1987); *People v. Smith*, 258 Ill. App. 3d 1003, 630 N.E.2d 1068 (1994). A sentence imposed by the trial court, which is within the statutory range, is entitled to great deference and will not be reversed absent abuse of discretion. *People v. Perruquet*, 68 Ill. 2d 149, 368 N.E.2d 882 (1987); *People v. Foster*, 262 Ill. App. 3d 892, 635 N.E.2d 855 (1994). As stated in *Perruquet*:

> "A reasoned judgment as to the proper sentence to be imposed must be based upon the particular circumstances of each individual case. [Citation.] Such a judgment depends upon many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citation.]" 68 Ill. 2d at 154, 368 N.E.2d at 884.

In addition, the court should consider the gravity of the offense, the circumstances of commission, the protection of society and the rehabilitation of the offender. *Smith*, 258 Ill. App. 3d at 1028, 630 N.E.2d at 1087. On review it is presumed that the trial court properly considered all mitigating factors and rehabilitative potential before it; and the burden is on the defendant to affirmatively show the contrary. *People v. McClellan*, 232 Ill. App. 3d 990, 600 N.E.2d 407 (1992). A reviewing court may not substitute its judgment for that of the trial court merely because it would have weighed the sentencing factors differently. *People v. Streit*, 142 Ill. 2d 13, 566 N.E.2d 1351 (1991).

■ Here, the offenses for which the defendant was convicted were Class X felonies, punishable by a range between 6 and 30 years' imprisonment. 720 ILCS 5/33A—3, 570/401(a)(2)(A) (West 1992); 730 ILCS 5/5—8—1(a)(3) (West 1992). The defendant argues that the trial court should have sentenced him to the minimum term of six years because he was 22 years old at the time of commission of the offense, he was providing support for his child, he had a high school degree and had maintained employment, and had no prior felony convictions or history of propensity toward violence. He also contends

---

[2]Due to our vacatur of defendant's 10-year sentence on the possession with intent to deliver conviction in part B below, we address the issue of sentence only as to the conviction for armed violence.

that the trial court erred in considering his unemployment history and his constructive possession of the handgun since that possession was an essential element of the offense of armed violence. Finally, the defendant contends that the trial court abused its discretion in sentencing defendant to a term of 10 years when the court sentenced codefendant Alvarez, who was similarly situated, to only six years for the same offenses.

The record in the instant case shows that, in determining defendant's sentence, the trial court considered the trial testimony, the presentence investigation, and the arguments of counsel relative to aggravation and mitigation. The court noted defendant's rehabilitative potential and acknowledged that the instant conviction constituted defendant's first felony conviction. In aggravation, however, the court found that the defendant used "his home as a sanctuary to engage in an illegal enterprise" and was found with a sizeable amount of cocaine. The court also found that the defendant was the "motivating force behind this illegal enterprise." In addition, at the hearing wherein defendant's motion to reduce sentence was denied, the court emphasized the seriousness of the offenses for which the defendant had been convicted.

Based upon the record before us, we cannot say that the sentence of 10 years was an abuse of discretion. It is clear that the trial court considered defendant's age, lack of prior criminal activity and rehabilitative potential and that the court balanced these mitigating factors against the aggravating factors of the seriousness of the offense, including the location of the illegal enterprise and the manner in which the offense was perpetrated. See *People v. Tatum*, 181 Ill. App. 3d 821, 826, 537 N.E.2d 875, 878 (1989) (trial court is not required to give rehabilitative potential more weight than it gives the seriousness of the offense). The 10-year prison term was well within the statutory guidelines, and, in fact, was close to the minimum sentence that could have been imposed. That sentence was not an abuse of discretion.

■ We also cannot agree, as the defendant contends, that the trial court improperly considered defendant's unemployment history or the presence of the handgun. A review of the record shows that the only mention of defendant's unemployment history came from the assistant State's Attorney who used it to show that the defendant made his livelihood by selling drugs. *Cf. People v. Bennett*, 222 Ill. App. 3d 188, 582 N.E.2d 1370 (1991); *People v. Birge*, 137 Ill. App. 3d 781, 485 N.E.2d 37 (1985) (mere fact of unemployment is not a proper factor in aggravation although defendant's occupation and status are relevant in sentencing). The trial court did not state that it was using

defendant's unemployment history as a factor in aggravation, and we cannot presume that it improperly considered that fact. See *McClellan*, 232 Ill. App. 3d 990, 600 N.E.2d 407 (reviewing court presumes trial court properly considered all sentencing factors). The record also does not support defendant's contention that the trial court considered the presence of the gun to be a factor in aggravation. Rather, the record shows that the court considered it as proof of the armed violence charge. Moreover, even if the court considered the gun, it was free to do so in considering the totality of the circumstances that existed at the time the officers entered the defendant's house. In this regard, the court could consider the risk created by the presence of a loaded gun within the defendant's reach. See *People v. Smith*, 258 Ill. App. 3d 261, 265, 630 N.E.2d 147, 150 (1994) (defendant's possession of a loaded handgun can be considered in sentencing defendant on armed violence offense). Finally, we find the four-year differential between the defendant's sentence and Alvarez's sentence justified by the court's finding that the defendant was the person in charge of the illegal operation. See *People v. Visnack*, 135 Ill. App. 3d 113, 481 N.E.2d 744 (1985) (disparity in sentences of two defendants justified where one was moving force in commission of crime).

## B. Merger of Offenses

Lastly, the defendant argues that his conviction for the offense of possession with intent to deliver should be vacated because it merged into the conviction for armed violence predicated on unlawful possession.[3] The State concedes that a merger would occur if the defendant was convicted of possession of a controlled substance and armed violence predicated on unlawful possession because the former offense is a lesser included offense of the latter. It argues, however, that the defendant was convicted of possession with intent to deliver rather than possession alone. In reliance on *People v. Green*, 199 Ill. App. 3d 927, 557 N.E.2d 939 (1990), it argues that the offense of possession of a controlled substance with intent to deliver has the added element of intent to deliver such that it is not a lesser included offense of the armed violence offense predicated on possession and thus would not merge into the latter offense.

In *People v. Roberts*, 263 Ill. App. 3d 348, 636 N.E.2d 86 (1994), the same appellate court district that authored *Green*, stated, "Even where lesser-included offenses are not involved, however, multiple

---

[3]The State argues that the defendant waived this issue by not raising it at trial and by not raising it in his posttrial motion, at his sentencing hearing or in his motion to reduce sentence. We reach the issue under the plain error rule. 155 Ill. 2d R. 615(a).

convictions and concurrent sentences cannot be permitted where more than one offense is carved from the same physical act." *Roberts*, 263 Ill. App. 3d at 354, 636 N.E.2d at 91. Accord *People v. Smith*, 258 Ill. App. 3d 261, 630 N.E.2d 147 (1994) (conviction of unlawful possession of a controlled substance with intent to deliver merged with armed violence conviction premised on same act). The *Roberts* court distinguished the facts in *Green* to find that separate acts supported the two convictions in *Green*, namely, defendant's possession of two small bags of cocaine and a loaded revolver in one pocket (supporting the armed violence offense premised on possession) and the possession of nine small plastic bags of cocaine in defendant's left pocket (supporting the possession with intent to deliver offense). Since in *Roberts* the defendant possessed a single large quantity of cannabis, the court found that the offense of armed violence based upon possession of a controlled substance merged with the cannabis trafficking offense.

■ Here, the State attempts to rely on the distinction in *Green* that was reiterated in *Roberts*. The State argues that five smaller bags of rock cocaine were found on the table nearer to the gun while a plastic bag containing two large rocks, a smaller bag containing loose rock cocaine and the scale were found on the other side of the table. According to the State, the former would support a conviction for armed violence premised on possession while the latter items would support the conviction for possession with intent to deliver. We disagree. At the time the police entered the premises, the defendant and Alvarez were weighing and packaging cocaine. All of the contraband recovered was seized from one area, the kitchen table. Each item of contraband was in close proximity to the other items. There was nothing to suggest that the defendant had segregated any of the cocaine for his personal use. Without more, the evidence only supports a finding of a single act by the defendant and Alvarez: weighing and dividing the cocaine into smaller quantities for sale and delivery using a gun to further that purpose. Thus, the cocaine possessed under the armed violence offense was the same cocaine possessed with intent to deliver thereby preventing multiple convictions and concurrent sentences. *Roberts*, 263 Ill. App. 3d at 354, 636 N.E.2d at 91. Conviction should be entered and sentence imposed only upon the most serious offense, the armed violence offense; and the conviction of and sentence for possession of a controlled substance with intent to deliver must be vacated. *Smith*, 258 Ill. App. 3d 261, 630 N.E.2d 147.

For the foregoing reasons, the judgment of the circuit court of Cook County is vacated in part and affirmed as modified.

Vacated in part; affirmed as modified.

LEAVITT, P.J., and BURKE, J., concur.