(text box: 1) NO. 5-00-0351

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellant, )  Marion County.

)  

)  No. 97-CF-91

)

STERLING A. MOORE, )  Honorable

)  John W. McGuire,

     Defendant-Appellee. )  Judge, presiding.

________________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:

After a bench trial in the circuit court of Marion County, Sterling A. Moore (defendant) was convicted of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 1996)).  Defendant appealed his conviction.  This court reversed and remanded for further proceedings after finding that trial counsel was ineffective for failing to file motions to quash arrest and to suppress evidence.  
People v. Moore
, 307 Ill. App. 3d 107, 716 N.E.2d 851 (1999).  On remand, new counsel for defendant filed motions to quash arrest and to suppress evidence.  After a hearing on the motions, the trial court denied the motion to quash arrest but granted the motion to suppress evidence.  The State now appeals.  The issue we are asked to consider is whether the trial court erred in granting defendant's motion to suppress.  We reverse and remand.

BACKGROUND

On March 27, 1997, defendant was charged by information with the offense of unlawful possession of a weapon by a felon.  Defense counsel did not file a motion to quash arrest or a motion to suppress evidence.  A bench trial ensued, after which defendant was convicted and sentenced to, 
inter alia
, 30 months' probation and 60 days in the county jail and ordered to pay costs and fees.  Defendant appealed his conviction, arguing that he was denied the effective assistance of counsel due to his counsel's failure to file a motion to quash arrest and a motion to suppress.  As previously stated, this court agreed and remanded the case for further proceedings.   

Upon the remand, new counsel was appointed to represent defendant.  Defense counsel filed a motion to quash arrest and a motion to suppress evidence.  Specifically, defense counsel moved to suppress a gun found during the search of defendant's car after his arrest and statements defendant made to the police after his arrest.  On March 1, 2000, a hearing was held on defendant's motions.  Both parties stipulated to the testimony presented at the first bench trial conducted in September 1997.  Those facts were set forth in 
Moore
.  We borrow liberally from the "FACTS" portion of that opinion (
Moore
, 307 Ill. App. 3d at 109-10, 716 N.E.2d at 853) in setting forth the evidence adduced at the first trial.    

On March 22, 1997, Officer Alan Rose, a patrol officer for the City of Centralia, was looking for Mark McClain, a suspect who had allegedly committed a battery "somewhat earlier."  Rose learned that McClain might be staying at 402 North Maple Street, so he went to that location.  Upon his arrival, Rose observed defendant in a vehicle leaving the driveway of the apartment building at that location.  Because he thought McClain might be in the vehicle, Rose pulled his marked car in front of the driveway to prevent the vehicle from leaving.  However, defendant turned out to be the only person inside the car.  Rose admitted that defendant had to stop when Rose blocked the driveway with his patrol car.

Rose, who was wearing his uniform, got out of his car and gestured to defendant to back up his car so Rose could pull into the driveway.  Instead of backing up his vehicle, defendant looked at Rose for a couple of minutes, got out of the car, and ran.  Rose chased defendant.  Rose believed he saw defendant pull a gun from his right rear pocket and throw it away during the chase.  Because of previous encounters Rose recognized defendant as soon as defendant exited the car.  Rose knew that defendant was not McClain.  Rose was aware that defendant was a convicted felon, but Rose did not have any arrest warrants for defendant on the day in question.

Officer James Ramsey, another Centralia police officer, assisted Rose at 402 North Maple.  Rose started chasing defendant at the southwest corner of the building.  Ramsey was at the northeast corner.  Rose radioed Ramsey that he thought defendant was armed with a weapon.  Accordingly, when defendant ran toward Ramsey, Ramsey drew his gun and told defendant to stop.  Defendant complied.  Defendant put his hands in the air and dropped to the ground.  Ramsey and Rose then arrested and handcuffed defendant approximately 150 feet from defendant's car.  The police did not recover any weapons outside of defendant's vehicle.

After defendant was arrested, Ramsey and Rose went back and looked through the windows into defendant's vehicle.  Both saw a green, zippered gun case in plain view between the driver's seat and the console.  Ramsey retrieved the case and found a .38-caliber revolver, a speed loader, and six live rounds of ammunition inside.  Ramsey gave the gun to Rose.  

The police took defendant to the police department and gave him his 
Miranda 
warnings (
Miranda v
. 
Arizona
, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)).  Rose asked defendant about the other weapon that Rose thought he saw defendant throw during the chase.  Defendant denied that he had a weapon while he was running.  Rose then stopped the interview but reinitiated the interview a short time later.  Defendant explained to Rose that he ran from the car because he reached down and felt the gun and feared that Rose would think it was his.  

Defendant testified that over a police scanner he heard police officers being dispatched to 402 North Maple and that he drove to that location to alert his nephew that police were on their way.  As defendant was exiting the driveway, a police car pulled in front of his vehicle.  Defendant recognized Officer Rose because Rose had previously arrested him and questioned him.  When defendant hit the brakes, a gun slid out from under his seat.  Defendant got out of the car and ran because he feared that the police would think the gun was his.  Defendant knew that Rose knew that he was a convicted felon who had only recently been released from prison.  Defendant claimed that the gun case was on the floor near the pedals rather than between the seat and the console.  Defendant admitted he knew that the case was a gun case.

Defendant's wife testified that the gun was hers.  She bought it for protection and placed it under her front seat.  She testified that she did not tell defendant the gun was in the car and that defendant was unaware that it was there.  However, on cross-examination, she admitted that she did not know how to load the gun. 

Defendant presented no additional evidence at the hearing on his motions to quash arrest and to suppress evidence.  The State presented additional testimony by Rose and Ramsey.  The State explained its reason for the officers' additional testimony: "[It is in order] to clarify some things that we were not allowed to bring out at trial because they were basically irrelevant as to the issue of guilt [but] are important as to probable cause for our reasonable suspicion."   

Officer Rose testified that when he arrived at 402 North Maple, defendant was blocking the area where Rose wanted to park.  Defendant refused to move the vehicle.  Defendant jumped out of the vehicle and started running.  At that point, Rose recognized defendant and started chasing him.  Rose had previous encounters with defendant and knew him to be a convicted felon.  He obtained weapons from defendant in at least one previous stop.  During the chase, defendant put his hand in his right rear pocket and pulled out what appeared to be a handgun and tossed it.  According to Rose, "there were quite a few people around in that back yard and in the front yard area" where defendant tossed the object.  Rose could not say what someone might have done with the object, because he was too busy securing defendant to know what happened to the object.  However, Rose testified that it was possible that someone had taken the object that he thought was a gun, without him witnessing it.

After defendant was handcuffed, Rose and Ramsey both looked into defendant's car.  Rose testified that he glanced in the vehicle and immediately noticed a gun case, "[p]robably to the right of where his right leg would be if he was driving the car, between there and the console."  Officer Ramsey then searched the car and found the gun and the ammunition.  The events occurred between 3 p.m. and 4 p.m.

Officer Ramsey testified that Officer Rose advised him via radio transmission that defendant was armed, in that defendant was pulling a weapon out of his pocket while defendant was being chased.  Officer Ramsey also knew defendant from previous encounters.  Ramsey had never actually encountered defendant while defendant was armed, but he had heard from detectives that defendant carried weapons.  Almost immediately after hearing the radio transmission, Ramsey saw defendant come around the corner of the building and throw some type of chrome object out into a field.  Ramsey already had his weapon drawn, and he ordered defendant to stop and go to the ground.  Ramsey said he did not pay a lot of attention to the object thrown by defendant because he was concentrating his attention on defendant.  Ramsey said that the object was silver and landed approximately 20 to 25 feet away from defendant.  Ramsey said that there were people all over the yard where the incident occurred and that it would have been physically possible for one of the spectators to pick up the item thrown by defendant. 

After securing defendant, Ramsey approached defendant's vehicle with Rose. Officer Ramsey observed a green, zippered handgun case between the console and the driver's seat.  He stated that the weapon that was found within the case was within reach of where defendant had been sitting.  Officer Ramsey testified that he had been to 402 North Maple on several previous occasions with search warrants for narcotics.  At that address is an apartment building.  It contains three separate apartments.     

After hearing all the evidence, the trial court denied defendant's motion to quash arrest, finding that when they placed him under arrest, the police officers had sufficient information to believe that defendant had committed a crime.  As to defendant's motion to suppress evidence, the trial court found that the automobile exception to the warrant rule did not apply because the car was parked on private property and a police car was blocking its path.  The trial court also found that the plain view exception did not apply, and the court granted defendant's motion to suppress.  On March 13, 2000, the State filed a motion to reconsider, which the trial court denied on May 5, 2000.  The State then filed this interlocutory appeal pursuant to Supreme Court Rule 604(a) (188 Ill. 2d R. 604(a)).

ISSUE

The issue we are asked to consider is whether the trial court erred in granting defendant's motion to suppress evidence.  The State argues that two justifications exist to support a search of the gun case:  (1) the gun and related items were properly seized under the automobile exception to the warrant requirement and/or (2) the gun and related items are admissible under the plain view doctrine.  The State also contends that defendant's statements to the police were admissible.  After careful consideration, we agree with the State that the plain view doctrine applied to authorize the seizure of the gun case, the gun, and the ammunition and that defendant's statements to the police were likewise improperly suppressed.  Because of our determination that the plain view doctrine applies, we need not consider whether the search was permissible under the automobile exception to the warrant requirement.

On a motion to suppress evidence, the defendant has the burden of establishing that the search and seizure were unreasonable.  725 ILCS 5/114-12(b) (West 1998).  Generally, a ruling on a motion to quash arrest or a motion to suppress evidence will be disturbed only if the decision is manifestly erroneous.  
People v. Mourecek
, 208 Ill. App. 3d 87, 91, 566 N.E.2d 841, 844 (1991).  However, the issue is subject to 
de novo
 review if neither the facts nor the credibility of the witnesses is questioned.  
Mourecek
, 208 Ill. App. 3d at 91, 566 N.E.2d at 844.  While there was little disagreement concerning the sequence of events leading to defendant's arrest and the seizure of evidence, defendant testified that the gun was on the floor of the car rather than between the console and the seat.  Moreover, the credibility of the witnesses, particularly defendant and his wife, was an issue.  Therefore, we review this issue under the manifest-weight-of-the-evidence standard.   

The United States Constitution's fourth amendment protects citizens against unreasonable searches and seizures.  U.S. Const., amend. IV.  This case involves an application of the plain view exception, first addressed in the plurality in 
Coolidge v. New Hampshire
, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971).  Generally, evidence seen in a police officer's plain view may be seized without violating the fourth amendment.  
People v. Garcia
, 296 Ill. App. 3d 769, 776, 695 N.E.2d 1292, 1297 (1998).  The plain view doctrine authorizes the warrantless seizure of an item when the following three requirements are met:  "(1) the officer must be lawfully present in the location from which he can plainly see the evidence; (2) it must be immediately apparent that the object in plain view is evidence; and (3) the officer must have a lawful right of access to the object." 
 Garcia
, 296 Ill. App. 3d at 776, 695 N.E.2d at 1297 (citing 
People v. Pierini
, 278 Ill. App. 3d 974, 977, 664 N.E.2d 140, 143 (1996)).    

In 
Texas v. Brown
, 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983), the United States Supreme Court rejected a fourth amendment challenge to a police officer's plain view seizure of "an opaque, green party balloon, knotted about one half inch from the tip," that fell from the defendant's hand to the seat beside him in the vehicle in which he was traveling.  
Brown
, 460 U.S. at 733, 75 L. Ed. 2d at 508, 103 S. Ct. at 1539 (opinion of Rehnquist, J., joined by Burger, C.J., and White and O'Connor, JJ.).  The seizing officer, Maples, testified that because of his previous experience in arrests for drug use, he was aware that narcotics are frequently packaged in balloons like the one the defendant held in his hand.  
Brown
, 460 U.S. at 734, 75 L. Ed. 2d at 508, 103 S. Ct. at 1539.  Justice Powell, in a concurring opinion, emphasized the uniqueness of the container, noting:  "We are not advised of any innocent item that is commonly carried in uninflated, tied-off balloons such as the one Officer Maples seized."  
Brown
, 460 U.S. at 746, 75 L. Ed. 2d at 517, 103 S. Ct. at 1546 (Powell, J., concurring, joined by Blackmun, J.).

The plurality in 
Brown
 concluded, "[I]t must be 'immediately apparent' to the police that the items they observe may be evidence of a crime ***."  
Brown
, 460 U.S. at 737, 75 L. Ed. 2d at 510, 103 S. Ct. at 1540-41 (opinion of Rehnquist, J., joined by Burger, C.J., and White and O'Connor, JJ.).  The plurality reiterated that probable cause involves a flexible, common sense standard:

" 'The process does not deal with hard certainties, but with probabilities.  Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same–and so are law enforcement officers.  Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' "  
Brown
, 460 U.S. at 742, 75 L. Ed. 2d at 514, 103 S. Ct. at 1543 (quoting 
United States v. Cortez
, 449 U.S. 411, 418, 66 L. Ed. 2d 621, 629, 101 S. Ct. 690, 695 (1981)).

With these considerations in mind, it is clear that, in the instant case, the police officers possessed the requisite probable cause to seize and open the gun case.  Officer Rose

knew defendant from previous encounters and had seized weapons from defendant during at least one previous stop.  He was also aware that defendant was a convicted felon.  Rose testified that defendant fled from his vehicle, and during the ensuing chase, Rose saw defendant pull a handgun from his right rear pocket and toss it aside.

Officer Ramsey likewise had experienced previous encounters with defendant.  During Ramsey's other encounters with defendant, defendant was not armed; however, Ramsey was cognizant that defendant was known to carry weapons.  Police detectives had told Ramsey as much.  On the date in question, Officer Ramsey received a radio dispatch from Officer Rose that defendant was armed.  As defendant rounded the corner of the building, Ramsey observed defendant toss a chrome object from his hand.

After defendant was secured, both Rose and Ramsey went to defendant's vehicle, which was parked approximately 150 feet away from where defendant was apprehended.  Both glanced in the car and saw a green, zippered gun case in plain view between the driver's seat and the console.  Defendant testified that the gun was on the floor of the car in front of the gas pedal.  We point out that the gun would have also been visible through the window if it had been on the floor.  It was between 3 p.m. and 4 p.m., leaving plenty of daylight to see the contents of the vehicle. 

Probable cause was both immediate and apparent.  When the officers observed a gun case in plain view in a car driven by a convicted felon, there was certainly evidence that a crime may have been committed.  A gun case by its very nature cannot support any reasonable expectation of privacy because its content can be inferred from its outward appearance.  
Arkansas v. Sanders
, 442 U.S. 753, 764 n.13, 61 L. Ed. 2d 235, 245 n.13, 99 S. Ct. 2586, 2593 n.13 (1979).  Even defendant admitted that the green case was a gun case.  Probable cause was even more obvious here, given the police officers' knowledge of defendant's propensity to carry weapons and their reasonable belief that defendant was carrying a weapon only moments earlier.  Accordingly, we find that the fourth amendment was not violated.  The trial court erred in finding that the plain view exception did not apply in the instant case.

Defendant asserts that even if we determine that the fourth amendment was not violated, the suppression of the evidence should be upheld pursuant to article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §6).  While it is true that our State constitution may be interpreted to give our citizens greater degrees of constitutional protection than the federal constitution (
People v. McCauley
, 163 Ill. 2d 414, 426, 645 N.E.2d 923, 930 (1994)), the Illinois Supreme Court has determined that State search and seizure protections are no greater than those offered by the federal constitution, at least in the context of a warrantless arrest.  
People v. Tisler
, 103 Ill. 2d 226, 469 N.E.2d 147 (1984).  While the instant case concerns a warrantless search in plain view, we believe that the same analysis is appropriate.  Like the 
Tisler
 court, we reject defendant's contention that State protection in this particular context was intended to be any more extensive than the protection provided at the federal level.  We note, however, that we are not blindly following the dictates of the United States Supreme Court in this matter.  See 
Tisler
, 103 Ill. 2d at 264, 469 N.E.2d at 166 (Goldenhersh, J., dissenting).  Our determination rests squarely on the facts in this case.  A review of those facts makes it clear that the police officers acted lawfully, no matter what constitutional protections defendant may be afforded. 

By all accounts, the gun was in plain view.  After securing defendant, the officers were certainly entitled to look into defendant's car through the windows.  After viewing the green, zippered gun case in plain view, they had probable cause to seize the gun case and its contents.  Had the officers not seized the gun case and its contents, they would have been derelict in their law enforcement duties.  Because the seizure of the gun case and its contents, including the gun, was lawful and because defendant's arrest was lawful, defendant's later statements referring to the gun are admissible.  We, therefore, reverse the trial court's order suppressing evidence of the gun case and gun found after defendant's arrest and the incriminating statements made by defendant after his arrest.     

For the foregoing reasons, the order of the circuit court of Marion County granting defendant's motion to suppress is hereby reversed, and the cause is remanded for further proceedings consistent with this opinion. 

Reversed; cause remanded.

MAAG, P.J., and HOPKINS, J., concur.

NO. 5-00-0351

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellant, )  Marion County.

)  

)  No. 97-CF-91

)

STERLING A. MOORE, )  Honorable

)  John W. McGuire,

     Defendant-Appellee. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: April 12, 2002

___________________________________________________________________________________

Justices
: Honorable Richard P. Goldenhersh, J.

Honorable Gordon E. Maag, P.J., and

Honorable Terrence J. Hopkins, J.,

Concur

___________________________________________________________________________________

Attorneys
 Hon. James W. Creason, State's Attorney, Marion County Courthouse, P.O. Box

for
 130, Salem, IL 62881; Norbert J. Goetten, Director, Stephen E. Norris, Deputy

Appellant
 Director, Sharon Shanahan, Contract Attorney, Office of the State's Attorneys

Appellate Prosecutor, Route 15 East, P.O. Box 2249, Mt. Vernon, IL 62864

___________________________________________________________________________________

Attorneys
 Daniel M. Kirwan, Deputy Defender, Dan W. Evers, Assistant Defender, Office of

for
 the State Appellate Defender, Fifth Judicial District, Route 15 East, P.O. Box 2430,

Appellee
 Mt. Vernon, IL 62864-0047

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 04/12/02.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.